HOWELL *et al.* v. JUMP *et al.*, *Appellants.*

Division One, July 6, 1897.

1. **Evidence:** IDEM SONANS IN GRANTEES. The grantor, who was probate judge, made and delivered to the administrator a deed to "Joseph Cates and his heirs and assigns," and soon afterward the court ordered that dower be assigned to the widow of the said Joseph Cates, who had been dead several months before the making of the deed, and who left surviving him a son, also named Joseph Cates. The evidence further discloses that the probate judge had a contract of sale of the land with the first Cates and that he had been paid by him at least a part of the purchase price, and had put him in possession of the property. *Held,* under the circumstances, that the evidence was sufficient to justify the trial judge in finding that the grantee was the dead, and not the living Joseph Cates.

2. **Interest Passed by Administrator's Sale.** Under the statute an administrator's sale passes both the equitable and legal title of the deceased.

3. **Conclusiveness of Final Settlement.** The final settlement of an administrator has the force and effect of a final judgment, and is conclusive, at least collaterally, on all matters comprehended under it.

4. ————: DISCHARGE: APPOINTMENT OF ADMINISTRATOR DE BONIS NON. The first administrator made final settlement and was discharged, only eighty-nine per cent of the original allowances having been paid, and certain land, for which deceased had in part paid at the time of his death but to which he had received no deed, remaining unsold without any assignment of dower. *Held,* that these facts gave the court jurisdiction to appoint an administrator *de bonis non,* and tho appointment having been regularly made, can not be attacked in a collateral proceeding. Objections to such appointment must be made to the probate court at the time.

5. **Extent of Widow's Dower.** The widow has dower in lands for which her deceased husband had paid in his lifetime, but to which he had not received a deed.

6. **Administrator's Sales:** DELAY. The probate courts having complete jurisdiction over the sale of real estate of decedents for the payment of their debts, are invested with the power to determine whether the delay, in the making of an application for the sale of real estate, has been unreasonable, and their judgments thereon are conclusive when drawn in question in collateral suits.

7. **Equitable Estate:** LACHES. Under the facts set out in the opinion it is held that plaintiffs were not guilty of laches in bringing suit to enforce their equitable estate in certain lands.

8. **Administrator's Sale to Pay Costs.** A sale of real estate by the administrator solely for the purpose of paying the costs of administration can not be made; but where there are bona fide debts, and a sale is regularly made to pay these, it can not be set aside because the land brought only enough money to pay the costs of administration.

9. **Thirty-Year Limitations:** PAYMENT OF TAXES. It being the duty of the owner of the life tenancy, in this case dower, to pay taxes on the land, there is no forfeiture of the title by the reversioner because he has not paid taxes. The thirty year statute is founded on the fact that one who has the right to possession has not insisted on that right for thirty years.

*Appeal from Greene Circuit Court.*—HON. JAMES T. NEVILLE, *Judge.*

AFFIRMED.

*McLain Jones, Wm. O. Mead* and *T. T. Loy* for appellants.

(1) The presumption should be indulged that Dollison had in his mind a grantee living to whom he could deliver the deed when he made it. Identity of name is *prima facie* identity of person. *Flournoy v. Warden,* 17 Mo. 435; *State v. Moore,* 61 Mo. 276; *Gitt v. Watson,* 18 Mo. 274; *Globe Printing Co. v. Stahl,* 23 Mo. App. 455; *Hoyt v. Davis,* 21 Mo. App. 235; *Darrett v. Donnelly,* 38 Mo. 492, 494, 495; *Railroad v.*

*Clark*, 68 Mo. 371. (2) The first administration began in 1854 and a final settlement was made in 1857, and approved and the administrator. discharged; at that moment the jurisdiction of the probate court over the estate of Joseph Cates was at an end. *Garner v. Tucker*, 61 Mo. 427; *Miller v. Major*, 67 Mo. 247; *Sheetz v. Kirtley*, 62 Mo. 417; *VanBibber v. Julian*, 81 Mo. 618; *Melton v. Fitch*, 125 Mo. 281. (3) Such order of approval has the force and effect of a final judgment and can only be attacked for fraud, and never in a collateral proceeding as is here attempted. *Cooper v. Duncan*, 20 Mo. App. 355; *Henry v. McKerlie*, 78 Mo. 425; *Johnson v. Beazley*, 65 Mo. 250; *Rowden v. Brown*, 91 Mo. 429; *Brooks v. Duckworth*, 59 Mo. 48; *Vosler v. Brock*, 84 Mo. 574. (4) The court in his finding of facts finds that no notice of final settlement was given and for that reason the approval of the final settlement of Tiller, administrator, was without authority or did not amount to a final settlement. After the lapse of forty years in the absence of testimony to the contrary it will be presumed that the proper notice was given. (5) A very proper question arises here as to when the plaintiff's cause of action accrued, if at all. We think it was in 1872. He then waits until all those most likely to know the facts are dead before moving in the matter. Courts of equity should scorn such claims. *State ex rel. v. West*, 68 Mo. 229; *Lenox v. Harrison*, 88 Mo. 491. (6) The record does not fix the dower of Edna Cates as covering the land here, and if it did there was no such seizure in her husband as will support dower. He neither had title or possession, nor was he in his lifetime entitled to either, hence the plaintiffs can not shield themselves from the statutes of limitation. (7) The plaintiffs are barred by the statute of limitation for ten years. They admit they were never in possession and never

paid any taxes thereon, while defendant proves posses-
sion in himself and those under whom he claims for
more than forty years. R. S. 1889, sec. 6764; *Rogers
v. Brown*, 61 Mo. 187; *Bliss v. Pritchard*, 67 Mo. 181;
*Burgess v. Railroad*, 99 Mo. 508.    (8)    The plaintiffs
are barred by the thirty years statute of limitation.
R. S., sec. 6770.    (9)    The last allowance against the
estate of Cates was eighteen years old when this land
was sold on the pretense of the payment of debts.
*Gunby v. Brown*, 86 Mo. 258; *Murphy v. De France*, 105
Mo. 53; *Swan v. Thompson*, 36 Mo. App. 155; *Mullen
v. Hewitt*, 103 Mo. 639; *George v. Middouyh*, 62 Mo.
549.

*James R. Vaughan, R. L. Goode* and *H. E. Howell*
for respondents.

(1)    There is no such presumption as that stated
in the first proposition by appellant, at least no such
presumption in the sense therein intended.    (2)    An
interested party can not be permitted to manfaucture
evidence of title by squatting upon a piece of land
and claiming to own it.    The statements of such a
person are admissible against him, but never in his
favor.    *Criddle v. Criddle*, 21 Mo. 522; *Blount v. Ha-
mey*, 43 Mo. App. 644.    (3)    There is competent evidence
that Dollison, who entered the land, made a contract
to convey to Cates, Sr.    It was true that there was no
evidence showing the loss of the original, but the case
was tried upon the part of all parties concerned, upon
the theory and with full knowledge that no such bond
was in existence.    (4)    There is no clear evidence
that Tiller, as such administrator, ever made final set-
tlement.    At the time mentioned the record shows that
he made a settlement and was discharged, and ordered
to go hence "without delay from this administration."

The action of the court appointing Headlee adminis-
trator of the estate of Cates was legal and proper.
The estate had not been finally administered. There
were claims allowed which had never been paid in full,
and there was land belonging to the estate which could
be sold to pay such claims, and it was the proper action
to take. *Johnson v. Beazley*, 65 Mo. 250; *Dunn v.
Bank*, 109 Mo. 90; *Brawford v. Wolfe*, 103 Mo. 391;
*Macey v. Stark,* 116 Mo. 481; *Rogers v. Johnson*, 125
Mo. 202. (5) The fact that Edna Cates had dower
in the land, and that there was no adverse possession,
was sufficient reason why respondent Howell took no
earlier action. (6) If it should be considered that
the description is ambiguous or indefinite, then testi-
mony was clearly admissible, and in this case was
offered to identify surrounding tracts, so as to satisfy
the description and locate the land. *Skinner v.
Haagsma*, 99 Mo. 208; *Bollinger Co. v. McDowell*, 99
Mo. 632; *Bray v. Adams*, 114 Mo. 489. (7) The thirty
year statute of limitation is no defense to this case.
The very basis of that statute is that the party out of
possession, and against whom it is sought to be
enforced, has been out of possession for thirty years
without cause; that such party had the right to such
possession, but never took it. (8) There is no limit
as to time within which an order of sale can be applied
for, for the sale of lands to pay debts of a deceased
person. *Macey v. Stark*, 116 Mo. 481. (9) The
finding on the facts and the judgment by the lower
court are entitled to more deference in this particular
case than in ordinary cases. The testimony was heard
orally. There were many witnesses. *Allen v. Logan*,
96 Mo. 591; *Lins v. Lenhardt*, 127 Mo. 281; *Bone v.
Tyrrell*, 113 Mo. 175.

MACFARLANE, J.—This is a suit in equity to establish in plaintiff the title to a tract of land in Springfield.    The petition is as follows:

"The plaintiffs state that heretofore, to wit, in 1854 one James Dollison, now deceased, was the owner of the following real estate, situate in Greene county, Missouri, to wit:   [Here follows a description of this land.]   That said Joseph Cates died in the latter part of 1854, and at and prior to his death said Cates was in possession of the property aforesaid, claiming it as his own; that during the year 1854 said James Dollison had made a contract in writing with said Joseph Cates to sell and convey to the latter the said premises, and had placed the said Cates in possession of said premises under said contract, and so said Cates remained until after his death in possession thereof, and after his death, to wit, on January 5, 1855, said Dollison executed and acknowledged a deed which acknowledged full payment of purchase money of said tract, and which purported to convey the above described land to Joseph Cates, which said deed was on said date recorded in the office of the recorder of deeds of Greene county, Missouri; that neither of these plaintiffs knew said Cates was dead at the time said Dollison executed said conveyance to him until the summer of 1895, nor ever heard of said facts, or had any intimation thereof, until that time; that afterward said premises were administered on as being assets and real estate belonging to the estate of said Joseph Cates, deceased, by the administrator of said estate, under the orders of the probate court of Greene county, Missouri; that two and a half acres thereof were set apart by commissioners appointed by said court to one Edna Cates, widow of said Joseph Cates, deceased, as her dower interest in the premises aforesaid; that all the

lands aforesaid were duly sold (subject to the dower of said widow) under orders of the probate court of Greene county, Missouri, in due course of administration by the administrator of the estate of said Joseph Cates, to pay the debts of said estate; that said sale occurred on or about April 25th, 1872, and plaintiff Howell purchased at said sale all the tract first aforesaid, including the part set apart to said Edna Cates, as widow, but subject to her dower, which sale was duly approved by said probate court, and a deed made to said H. E. Howell, by said administrator, conveying to said Howell all the right, title, interest and estate, at law or in equity, of the said Joseph Cates, deceased, of, in and to the premises first aforesaid, which deed was duly filed for record June 8th, 1872; that the said Edna Cates has been in possession of the portion of said premises allotted to her, as dower, until the year 1892, or thereabouts, when she departed this life; that otherwise and except said dower right, plaintiff Howell has been in possession of all the premises aforesaid, since his aforesaid deed, dated April, 1872, was delivered, claiming to own the same and every part thereof against all other persons whomsoever, except his own grantees of different parts of said tract; that the defendant, J. W. Jump, has wrongfully taken possession of the following part of said tract, which is included in the part of the premises first aforesaid, which was allotted said Edna Cates for her dower, to wit (describing a small part of the tract first described), and is now with defendant, S. C. Haseltine in possession of same, claiming to own it under certain deeds from the heirs of said Joseph Cates, deceased, and said S. C. Haseltine claims to own the same under conveyances from the heirs of James Dollison, deceased; that both said Cates' and said Dollison's heirs at the time they executed said conveyances, had full knowledge of the

rights, title, interest and estate of said Howell, of, in and to said premises, as did likewise the defendants, Jump and Haseltine; that by reason of the said Joseph Cates, deceased, being dead at the time said James Dollison made the aforesaid conveyance of the said premises to him, said Joseph Cates, pursuant to the bond and contract to that effect theretofore executed and delivered (along with possession of the premises) by said Dollison to said Cates, the legal title did not pass to said Cates by said conveyance, and so did not pass by the aforesaid administrator's deed to the plaintiff, Howell, but said Cates did own, have and hold the full equitable right and interest in and to said premises by virtue of his purchase from said Dollison, and in fact the complete estate, except the naked legal title; that the heirs of said Joseph Cates and of said Dollison, as well as the defendants Jump and Haseltine, at all times well knew that said Joseph Cates paid Dollison the full purchase price for said lands; that plaintiff Howell has conveyed to plaintiffs Goode and Vaughan, an undivided one half interest in the premises first aforesaid, covering and including the above described tract, claimed and occupied by said Jump; that plaintiffs are without adequate remedy at law, so pray that all right, title, interest and estate of said Jump and the said Haseltine, either at law or in equity of, in and to the tract last aforesaid, be divested out of said defendants and vested in these plaintiffs; and for all other proper relief, including possession of said premises.''

Defendant Haseltine answered by general denial, but does not appeal from the judgment against him. The record shows that ''he in open court in this trial confesses plaintiff's right against him and contends not.''

Defendant Jump by his answer alleges that he

claims title under a deed from Joseph Cates, Jr., a son of the Joseph Cates, Sr., under whom plaintiffs claim, and that the deed from James Dollison to Joseph Cates, mentioned in the petition, was intended and did convey the land to the son who paid the purchase price therefor.

Further answering he charges that though Joseph Cates, under whom plaintiff claims, was, at his death, the equitable owner of the land, the proceedings of the probate court were insufficient to pass such equitable title to the purchaser. He also pleaded the thirty years statute of limitation, provided by section 6770, Revised Statutes of 1889.

Affirmative relief was prayed as follows:

"Wherefore, this defendant prays the court by its proper decree to declare plaintiffs entitled to no right, title, claim or interest in or to said premises, and that all the deeds under which they claim from the administrator's deed down, be declared canceled, set aside and for naught held and esteemed, and the cloud cast upon defendant's title thereby removed, and that the title to said premises be declared vested in this defendant freed from all claim and color thereof in the plaintiffs and for all other proper relief."

A trial resulted in a finding and judgment for plaintiffs in accordance with the prayer of the petition. Defendant Jump appealed.

It appears, we think, by a great preponderance of the evidence, that in the year 1854 Joseph Cates, Sr. purchased of James Dollison a tract of eight or ten acres of land on the south side of the city of Springfield and took a contract for a deed and went into possession thereunder. He afterward sold lots to various parties who, by agreement, paid the purchase price to Dollison, who made deeds to them. Joseph

VOL. 140 mo—29

Cates, Sr., died about November, 1854. The said Dollison was at that time and for two years thereafter, judge of the probate court of the county, and Thomas Tiller was public administrator. Tiller as such administrator took charge of the estate of Joseph Cates, Sr., and proceeded to administer the same. On January 5, 1855, the said Dollison executed and delivered to Tiller a deed to the balance of said land about six acres. This deed acknowledged payment by Joseph Cates of three hundred dollars consideration, and conveyed the land to "Joseph Cates and to his heirs and assigns." This deed was thus made and delivered under advice of counsel.

The course of administration of the estate of Joseph Cates was as follows: On June 5, 1855, about $800 in claims had been allowed against the estate. On said day the administrator was ordered to sell the real estate for cash to pay the debts. On September 3, 1855, commissioners were appointed to set off to "Edna Cates, widow of Joseph Cates, deceased" her dower in the land conveyed by Dollison to Joseph Cates and his heirs under deed heretofore described. The commissoners set off to her under this order about two and one half acres, a part of which is the land claimed by defendant Jump.

The evidence tends to prove that the administrator sold in small tracts all of the six acres except the part so assigned to the widow. Deeds were never made conveying the land so sold, but the administrator is "charged with sale bill of real estate not heretofore charged $322." The evidence shows that persons who claimed to have purchased from Tiller took possession and improved the lots claimed by them respectively. About eighty-nine per cent was paid by Tiller on claims allowed against the estate. In November, 1857, Tiller, administrator, is ordered to pay certain sums to

creditors, "and that he be discharged and go hence without delay from this administration." There had been no notice of final settlement so far as appears. On November 5, 1860, Jacob Schultz was appointed administrator *de bonis non* of the estate of Joseph Cates, deceased. Nothing was done by this administrator.

On February 22, 1871, Schultz's letters were revoked and Elisha Headly, public administrator, was ordered to take charge of said estate which he did. On the application of this administrator an order was made on July 20, 1871, to sell the six acres. The land was appraised at $100, and was sold to plaintiff H. S. Howell for $26.50. Report of sale made and approved April 23, 1872. Deed from administrator to Howell dated April 20, 1872. A subsequent settlement shows that the amount realized on the sale was only sufficient to pay the costs of administration and sale. In connection with this order of sale there was evidence tending to prove that it was only intended to include the land assigned to the widow as dower, which was considered of but little value. The whole was sold because it could not be told what had been sold by the former administrator.

The evidence showed that Joseph Cates, Jr., occupied portions of the six acre tract at intervals for several years, being absent at one time as long as two years. Joseph Cates, Jr., died in 1885. His widow and heirs conveyed their interest in the land to defendant Jump in December, 1889.

I. The evidence is very conclusive that Dollison sold the original tract to Joseph Cates, Sr., and that by his deed, after the death of the vendee, he intended to carry out his contract of sale with the administrator and heirs of deceased. The deed was delivered to the administrator and the grantor was himself probate

judge, and as such ordered dower to be assigned to the widow of deceased out of this land. Indeed there was direct evidence that the deed was made under advice of counsel with a view of executing the previous contract.

The fact that Joseph Cates, Jr., was living when the deed was made might raise a presumption of fact that he was intended as the grantee, but such presumption was rebutted to the satisfaction of the trial judge, and we find no reason to question his conclusion.

The evidence that Joseph Cates, Jr., bought this six acre tract from his father, and that the purchase price therefor was paid to Dollison, consists entirely of statements and declarations of said Joseph, Jr., while in possession of the land and claiming title. Assuming this evidence to have been competent the statements were so contradictory that but little credit can be given to them if made. To some of the witnesses he claimed title as heir of his father, and to others as grantee under the Dollison deed. He took deeds from the other heirs of his father which is a fact very conclusive that he only claimed as heir.

We are entirely satisfied, therefore, that Joseph Cates, Jr., had no interest in the land except such as was acquired by inheritance from Joseph Cates, Sr., and by deeds from the other heirs.

II. If the purchase money was paid by Joseph Cates, Sr., prior to his death, then his vendor, Dollison, held the legal title to his use. The entire equitable title was vested in deceased, and was subject to sale for the payment of his debts. The deed afterward made to the heirs of deceased could not have the effect of removing the land out of the reach of the creditors of deceased, or of defeating the jurisdiction of the probate court over it if needed for the payment of debts. Under

the statute, all the right, title and interest the deceased had in the land at his death may be sold by the administrator, and all such right passes to the purchaser. The statute is broad enough to include equitable, as well as legal titles. *Valle v. Bryan*, 19 Mo. 424.

It follows, therefore, that plaintiffs, under the administrator's deed, acquired the equitable title to the land in question, if the proceedings under which the sale was made were sufficient to pass such title. In such case they would be entitled to the relief sought and granted by the circuit court.

If, on the other hand, the sale and deed of the administrator were insufficient to pass the equitable title to the purchaser, then plaintiffs must fail, for they would have no basis for their suit.

III. Defendants insist that the probate court had no jurisdiction to make the order of sale for the reason that Tiller, the first administrator, made a final settlement of the estate in 1857, and was properly discharged.

There is no doubt of the general rule that the final settlement of an administrator has the force and effect of a final judgment, and is conclusive, at least collaterally, on all matters comprehended under it. *Garner et al. v. Tucker*, 61 Mo. 431.

But it appears from the record of the probate court that debts amounting to about $800 were allowed against the estate, and on final settlement of Tiller, only eighty-nine per cent of the original allowance had been paid. It also appears that the land which was subject to the dower estate of the widow had not been sold. These facts gave the court jurisdiction to appoint an administrator *de bonis non*. The appointment was regularly made and can not be attacked in this collateral proceeding. Notice of such appointment was duly given and objections thereto should have been made to the probate court. *Rodgers v. Johnson*,

125 Mo. 213; *Macey v. Stark*, 116 Mo. 499; *Brawford v. Wolf*, 103 Mo. 395.

IV.    Defendant insists that Joseph Cates, Sr., had no such seizin in the land as entitled his widow to dower.   We assume, from the fact that Dollison made the deed, that Joseph Cates paid for the land before his death.   By the statute every widow is endowable of the third part of all the lands whereof her husband, or any person to his use, was seized of an estate of inheritance, at any time during his marriage.   When the purchase money was paid to Dollison by Cates the former stood seized of the land for the use of the latter and the wife's inchoate right of dower immediately attached and became absolute on the death of her husband.   R. S. 1889, sec. 4513.

V.    Objection is made that the delay in applying for the sale of the real estate is unreasonable and should not therefore be enforced.

There is no doubt that the statute contemplates that the affairs of an estate will be settled as speedily as practicable.   It is said: ''In reason and justice there must be a limit of time in which this order of sale must be taken.   As there is no statute upon the subject it must be done in a reasonable time.   What that is, must in this as in all cases where the sale is applied for, be determined from all the circumstances, and each particular case must, to a great extent, furnish its own rule.''   *Gunby v. Brown*, 86 Mo. 258.   But as was said in a subsequent case ''the proceeding there was one to enjoin a sale, while the effort here is to have a sale actually made declared void in a collateral suit.   There is therefore no analogy between the two cases.''   *Macey v. Stark, supra.*   It may be said further, as a complete answer to this objection, that the probate court is given complete jurisdiction over the sale of real estate of decedents for the payment of their debts.   In the

exercise of their jurisdiction they must determine for themselves, in each case, whether the delay in making application for the sale has been unreasonable, and their judgments in such matters are conclusive when drawn in question in a collateral suit.

The court ordered the sale, which was regularly made by the administrator and approved by the court. No objection was made thereto by the heirs or others interested.   The proceedings appear to have been regular and in all respects in compliance with the requirements of the statutes.   To pronounce the sale invalid in this suit would be to deny to the probate court the jurisdiction with which the statute has clothed it.   This we can not do.

What is said in this paragraph answers several other objections, which need not be noticed further.

VI.   The sale by the administrator was made in 1872, and this suit was not commenced until 1895, over twenty-two years after the cause of action accrued. The entire six acres was appraised in 1871 at $100 and was sold, subject to previous unreported sales by the former administrator, for $26.50.   It was understood, however, that the sale was only intended to include the reversionary interest of the heirs in the land which had been assigned to the widow as dower.   Since the administrator's sale, the land has greatly increased in value.   Defendants now insist that the long delay and laches of plaintiffs in asserting their right constitute a complete bar to the action.   Plaintiffs say, in excuse for these delays, that they were not informed, until a short time before the suit was commenced, that the deed from Dollison to Joseph Cates was made after the death of the grantee named therein, and they consequently supposed that their legal title was perfect. They also say that the land in suit is a part of the land assigned to the widow as dower, that the conflict in inter-

est between plaintiffs and the heirs of Joseph Cates, deceased and their grantees did not arise until the death of the widow which only occurred a short time before the commencement of the suit.

That equity refuses relief to those who have unreasonably delayed in applying for it, is a rule well established. What may be a reasonable time depends upon the circumstances of each particular case. *Bliss v. Prichard*, 67 Mo. 181. In the case at bar plaintiff Howell had, from the date of the administrator's deed, the complete equitable title to the land in suit, subject to the life estate of the widow. While the widow lived she had the life estate and was entitled to the possession, use and enjoyment of the premises. It is probably true that plaintiff Howell might have prosecuted a suit against the heirs of Joseph Cates deceased, prior to the death of the widow, but his right to the possession and enjoyment of the land did not accrue until after her death. In the circumstances we do not think he ought to be charged with unreasonable delay in not commencing his suit until the termination of the life estate. Until then he had no present right to the possession and he did not know that his equitable title would be disputed. The right to an action at law for possession did not accrue to either plaintiffs or the heirs until the death of the widow. Until that event there was no conflict between them. The heirs, or those claiming under them, did nothing during the life of the widow which would make it inequitable to enforce plaintiffs' rights. Our opinion is, therefore, that in the circumstances equity did not require plaintiffs to commence their suit until they could thereby receive complete relief and a decree would settle all controversies between the parties. The date of the death of the widow does not definitely appear. We infer from the evidence that she died in another State

three or four years before this suit was commenced. Considering all the circumstances, we are of the opinion that the delay of plaintiffs in asserting their rights was not such as should in equity defeat them.

VII. The fact that the land only sold at the administrator's sale for enough to pay the costs of the administration does not defeat this sale. It is true, a sale of land by an administrator can only be made for the payment of the debts of deceased. A sale made merely for the purpose of paying the costs of administration has been held to be invalid. *Farrar v. Dean*, 24 Mo. 16.

But in this sale there were debts remaining unpaid and the sale was made for the purpose of paying them. The court therefore had jurisdiction to order the sale and the purchaser was not bound to bid an amount which would pay the debts or to see that the money paid was properly applied.

VIII. The thirty years statue of limitation provided by section 6770 is no bar to this action. Plaintiff did not purchase until 1872. The interest purchased was subject to the life estate of the widow whose duty it was to pay the taxes. There was not, therefore, a neglect by plaintiff for thirty years of the public duty of paying taxes on the land. Such neglect is the very foundation of this statutory forfeiture. The land was assigned to the widow in 1856, more than thirty years before the duty of plaintiff to pay the taxes arose. During all these thirty years plaintiff neither claimed nor had a right to claim, the possession. The statute, in order to create a bar, clearly contemplates a neglect to insist upon a possessory right for thirty years. It has no application to a case like this, in which the right of possession in another is consistent with the title claimed.

The answer of defendant charges fraud in procur-

Kansas City v. Oil Company.

ing the order of sale and fraudulent collusion between the administrator and the purchaser. We find nothing in the evidence to sustain these charges, indeed they are not insisted upon here as a ground for reversal. The judgement is affirmed. BARCLAY, P. J., ROBINSON and BRACE, JJ., concur.