**CROOKS, Collector of Internal Revenue, v. HARRELSON et al.**

Circuit Court of Appeals, Eighth Circuit.
October 1, 1929.

No. 8533.

William T. Sabine, Jr., Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (William L. Vandeventer, U. S. Atty., and Harry L. Thomas, Asst. U. S. Atty., both of Kansas City, Mo., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for appellant.

S. L. Swarts, of St. Louis, Mo., and F. S. Bright, of Washington, D. C. (Massey Holmes, of Kansas City, Mo., and L. C. Connally, of Washington, D. C., on the brief), for appellees.

Before STONE, BOOTH, and GARDNER, Circuit Judges.

BOOTH, Circuit Judge. This was an action brought by the appellees, beneficiaries under the will of William H. Harrelson, deceased, against Noah Crooks, appellant, as Collector of Internal Revenue for the Sixth United States Collection District of Missouri. The action was to recover a refund of $37,-762.20 of federal estate taxes which had been paid by the executors of the estate.

The complaint alleged that William H. Harrelson of Kansas City, Mo., died testate March 8, 1920; that the executors under his will in due time, acting under the provisions of the Revenue Act of 1918 (40 Stat. 1057), filed with the collector of internal revenue a return for the purposes of the federal estate tax; that the Commissioner

of Internal Revenue upon a final audit and review determined that the total net valuation of decedent's estate for federal estate tax purposes was $2,279,068.28, of which amount the value of the real estate owned by decedent at the time of his death was $269,730; that the amount of the tax as fixed by the Commissioner of Internal Revenue was paid by the executors, and a claim for refund of $37,762.20 was filed, based upon the contention that the value of the real estate situated in Missouri and owned by the decedent at the time of his death was not, under the provisions of the Revenue Act of 1918, subject to the federal estate tax, and that the amount of the tax ($37,762.20) paid on the value of said real estate, was illegally assessed and collected and should be refunded.

The complaint further alleged: "That under the laws of the State of Missouri under which the estate of said decedent was administered, the real estate situated in the State of Missouri and owned by the decedent at the time of his death was not subject to the payment of the expenses of administration of said estate and, for this reason, the value of said real estate should not, and could not lawfully, have been included in the value of the gross estate of the decedent for the purpose of calculating the amount of the Federal estate tax due from said estate."

The defendant demurred to the complaint. The court overruled the demurrer, and, the defendant refusing to plead further, judgment was entered for the plaintiffs in the amount asked.

The question involved in this appeal is whether, under the provisions of section 402 (a) of the Revenue Act of 1918 (40 Stat. 1097), the value of real estate situated in the state of Missouri should be included in the value of the gross estate of the decedent Harrelson who died the owner thereof.

Section 402(a) of the Revenue Act of 1918 reads as follows:

"Sec. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate."

There are two main contentions made by the appellant: (1) That section 402(a) has no application to real estate, but applies only to personal property; (2) even if the statute has application to real estate, yet, that real estate in Missouri *is* subject to the payment of the expenses of administration.

The argument that section 402(a) relates solely to personal property is based upon the use of certain phrases and words used in the section. It is contended that the phrases, "subject to the payment of the charges against his estate," "the expenses of its administration," and "subject to distribution as part of his estate," were all anciently used in connection with personalty only; that Congress knew this, and accordingly used the phrases with their ancient technical meaning, and as relating solely to personal property.

We do not acquiesce in the contention thus made for several reasons. It was doubtless the intention of Congress to include both real estate and personal property within the provisions of section 402 considered as a whole. The entire section constitutes a single sentence. The opening words of the section, "that the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated," include no definite amount of any kind of property. It is only by reading the opening words in connection with one or more of the clauses (a) to (f) that any definite amounts of any kind of property can be arrived at. Clauses (a) to (f) are what their language states them to be—extent clauses and not exception clauses. If, therefore, clause (a) should be construed as relating to personal property only, a large amount of real property would not be included within the purview of section 402 at all, for the opening words of that section, read in connection with clauses (b) to (f), would fail to cover many interests in real property. Furthermore, the argument of appellant, based upon the ancient technical meaning of the words used in section 402(a), goes too far and defeats itself. The word "distribution" as applied to estates meant at common law the division of estates of intestates only. It was not properly applied to testate estates. 18 C. J. 803; Rogers v. Gillett, 56 Iowa, 266, 9 N. W. 204. If, therefore, the ancient technical meaning is applied in section 402(a), personal property of intestate estates only would be covered, while personal property passing by will would not be included. Such a result plainly could not have been intended by Congress.

Our conclusion on this branch of the case is that the language of section 402(a) is not

to be given any ancient technical meaning, but is to be read giving to the words their ordinary, popular meaning; and that, when so read, both real and personal property are included.

With such meaning given to the words used, the construction of section 402(a) is, in our opinion, perfectly plain. The value of such real estate of the decedent as fulfills the conditions of clause (a), and such only, is to be included in the value of the gross estate. The conditions attaching to such real estate are that the decedent at the time of his death had an interest therein; that the real estate after the death of decedent is subject to the payment of the charges against this estate; that the real estate is subject to the expenses of the administration of the estate; that the real estate is subject to distribution as part of the estate of decedent. In our opinion it makes very little practical difference whether these conditions are considered as four separate, independent conditions, or three separate conditions, treating the second and the third as a single but combined condition. The latter method seems to have been adopted as a matter of convenience in the case of United States v. Field, 255 U. S. 257, 41 S. Ct. 256, 65 L. Ed. 617, 18 A. L. R. 1461. There was no intimation, however, in thus combining two of the conditions that both were not equally important. Nor was there any intimation that the word "and" before the words "the expenses of its administration" in section 402 (a), should be construed as meaning "or," which is what the appellant in effect contends for. What the Field Case did hold was that all of the conditions must be met before the property could be included as part of the gross estate; that the particular property there in question was not "subject to distribution as part of the testator's estate," and therefore was not thus included.

It may also be noted that the regulations relating to the estate tax, which were promulgated by the Commissioner of Internal Revenue after the decision in the Field Case, expressly recognize that real estate, in order to be included in the gross estate, must fulfill the condition that such real estate is "subject to * * * the payment of the expenses of * * * administration." This condition is recognized as an independent one. See regulations 63, article 11, approved by the Secretary of the Treasury July 27, 1922, under the Revenue Act of 1921; regulations 68, article 10, approved by the Secretary of the Treasury March 26, 1925,

under the Revenue Act of 1924. The Revenue Act of 1926, § 302(a), 26 USCA § 1094, cut out all of the conditions contained in section 402(a) of the Revenue Act of 1918, except the first, "(a) to the extent of the interest therein of the decedent at the time of his death"; so that under the present law the question here involved can no longer arise.

■■ It is also a contention of counsel for appellant that the expression "charges against his estate" in section 402(a) includes "expenses of its administration." To hold thus would be to wipe out a plain distinction made by the statute itself, and which has existed in many jurisdictions; to hold thus would also violate one of the primary canons of statutory construction—that each clause and each word of a statute should, if reasonably possible, be given meaning and effect. We think this contention of counsel should not be sustained.

■ As to the second main contention—that in the state of Missouri real estate is subject to the payment of the expenses of administration of the estate—the question involved is purely one of local law. Clarke v. Clarke, 178 U. S. 186, 20 S. Ct. 873, 44 L. Ed. 1028; Olmsted v. Olmsted, 216 U. S. 386, 30 S. Ct. 292, 54 L. Ed. 530, 25 L. R. A. (N. S.) 1292; Wardell v. Blum (C. C. A.) 276 F. 226; In re Barnett (C. C. A.) 12 F.(2d) 73.

At common law real estate of a decedent was not subject to the payment of his simple contract debts, nor to the payment of legacies, nor to the payment of the expenses of administering the estate. 24 C. J. 459; United States v. Drennen, 25 Fed. Cas. No. 14,992; Titterington v. Hooker, 58 Mo. 593; McQuitty v. Wilhite, 218 Mo. 586, 592, 117 S. W. 730, 131 Am. St. Rep. 561.

Most of the states have by statute changed the common-law rule as relating to debts, and have made the real estate subject to the payment of debts in case the personal property is insufficient for that purpose. Some of the states have by statute made the real estate subject also to the payment of the expenses of administration of the estate. Missouri has by statute modified the common-law rule so far as concerns debts and legacies. Section 141, Revised Statutes of Missouri 1919, reads as follows: "Sec. 141. *Sale of lands to pay debts.*—If any person die and his personal estate shall be insufficient to pay his debts and legacies, his executor or administrator shall present a petition to the proper court, stating the facts;

and praying for the sale of the real estate, or so much thereof as will pay the debts and legacies of such deceased person."

In Missouri the common law is in force and effect, except in so far as it has been modified by statute. Rev. St. Mo. 1919, § 7048; Lindell v. McNair, 4 Mo. 380; Reaume v. Chambers, 22 Mo. 36; Baker v. Crandall, 78 Mo. 584, 47 Am. Rep. 126.

The common-law rule that real estate of a decedent is not subject to the payment of administration expenses is, we think, clearly recognized in Missouri.

In Farrar v. Dean, 24 Mo. 16, 18, the court said: "The administrator has no power over the real estate, except so far as to hold it for the payment of the debts of the deceased; and when there are no debts, the land descends to the heirs, or escheats to the state; and it is not in the power of the administrator to hinder this legally; nor can the Probate Court direct or order a sale of real estate for costs accrued after the administration begins, and only because it did begin. Such costs are not debts due by the deceased, nor debts at the time of the death of the intestate."

In Presbyterian Church, etc., v. McElhinney, 61 Mo. 540, 542, 543, the court said: "Under our statute respecting administration, and the repeated adjudication of this court thereon, probate courts possess no power to allow any claims against a decedent's estate, or to order the sale of land belonging thereto, except for the payment of the debts of the deceased, i. e., those in existence at the date of his death."

In the case In re Motier's Estate, 7 Mo. App. 514, 517, the court said: "The land belongs to the heirs. It cannot be touched for any of the purposes of the administration, except in the specific mode and for the specific objects elsewhere indicated by statute. When real estate is converted into money, whatever surplus remains after a proper application of the objects of the conversion still represents the realty for the benefit of the heirs, and cannot be merged in the personalty for purposes which pertain only to that classification."

In Ritchey v. Withers, 72 Mo. 556, a case in which land was sold by the administrator for the payment of debts, but part of the proceeds was used for the payment of improvements and repairs and for additional allowance to the widow, the court said (page 559): "The county court had no power to order the sale of real estate except for the payment of debts, and when it was sold for that purpose, the proceeds arising from the sale could not be diverted from it and applied to another and different purpose. The county court could not have ordered a sale of the land for the purpose of paying the administrators for expenses incurred in making improvements thereon, nor for the purpose of raising money to appropriate to the widow for her support for twelve months, and it was equally powerless to appropriate to either of said purposes any part of the proceeds derived from a sale of land made to raise money to pay debts."

In State v. Doud, 216 Mo. App. 480, 269 S. W. 923, 924, the court said: "If the real estate is sold by order of the probate court for the payment of the debts of the decedent, any surplus of the proceeds of the sale remaining after payment of the debts goes to the heir or devisee, and if the heir or devisee has conveyed the real estate the surplus belongs to her grantee. In other words, when real estate is converted into money for the payment of the debts of the decedent, the surplus of the proceeds of the sale remaining, after payment of the debts, retains the character of real estate for the purpose of succession or distribution, and goes to the person in whom the title to the real estate was vested when it was converted." See, also, Teverbaugh v. Hawkins, 82 Mo. 180; Garnett v. Carson, 11 Mo. App. 290; In re Estate of Lloyd, 44 Mo. App. 670.

The cases of Elstroth v. Dickmeyer, 88 Mo. App. 418, and Elstroth v. Young, 94 Mo. App. 351, 68 S. W. 100, when rightly understood, are in harmony with the foregoing cases. In the Elstroth Cases the expenses which were allowed to be paid out of the proceeds of land sold by order of court were the expenses and commissions incurred in or as incidental to the sale of the lands, and were not the ordinary expenses of administration. The distinction is recognized by the court in the following language in Elstroth v. Young, 94 Mo. App. pages 355, 356, 68 S. W. 101: "The proceeds of the sale of lands, made by an order of the probate court in pursuance of the provisions of Chapter I, art. 8, Rev. St. 1899, cannot be used for the purpose of making good deficiencies in the expenses of administration."

In Howell v. Jump, 140 Mo. 441, 41 S. W. 976, land was ordered sold to pay debts. The proceeds were applied by the administrator to the payment of the costs of administration and of the sale. The court recognized the rule in Farrar v. Dean, supra, but held that the sale would not be set aside because of the misapplication of the proceeds.

From the foregoing review of the Missouri authorities we think it is clear that real estate of a decedent in that state cannot be sold for the payment of expenses of administration, nor can the proceeds of land sold to pay debts be lawfully used to pay expenses of administration. We think it follows that such real estate is "not subject" to the payment of expenses of administration within the meaning of section 402(a). We hold, therefore, that the value of the real estate in question should not have been included in the value of the gross estate of the decedent.

The recent cases in this court of United States v. Waite, 33 F.(2d) 567; United States v. Dietz, 33 F.(2d) 576; Allen v. Henggeler, 32 F.(2d) 69, have been called to our attention.

In the Waite Case the question involved was whether the value of the share which a widow may elect to take in lieu of the provision of a will under the Missouri statute should be included in determining the value of the gross estate of the decedent under section 402 of the Revenue Act of 1918. The court proceeded on the assumption that both real and personal property were involved. It held that the value of the real estate should be included in determining the value of the gross estate, not because the real estate fulfilled the conditions of section 402 (a), but because it fulfilled the condition of section 402(b). The value of the personal property was included because the personal property fulfilled the condition of section 402(a).

In neither the Dietz Case nor the Henggeler Case was the question which is involved in the case at bar discussed or determined.

The case of Steedman v. United States, 63 Ct. Cl. 226, involved a question identical with that in the case at bar, and a conclusion was reached by that court opposite to the one which we have above indicated. We have the utmost respect and deference for the opinions of that court. We have, therefore, given careful thought and consideration to the opinion in the Steedman Case; and we regret that we are unable to acquiesce in the conclusion therein reached.

[6] Whatever may be our views as to the wisdom of the condition in question, contained in section 402(a), yet, that condition was part of the law at the time of decedent's death. The executors of his will and the beneficiaries thereunder had the unquestionable right to insist that the condition should be given effect in computing the value of the gross estate of decedent. It is our duty to construe the statute as we find it. In United States v. Merriam, 263 U. S. 179, 187, 188, 44 S. Ct. 69, 71, 68 L. Ed. 240, 29 A. L. R. 1547, the court in its opinion used the following language, which we think is apposite here:

"On behalf of the Government it is urged that taxation is a practical matter and concerns itself with the substance of the thing upon which the tax is imposed rather than with legal forms or expressions. But in statutes levying taxes the literal meaning of the words employed is most important for such statutes are not to be extended by implication beyond the clear import of the language used. If the words are doubtful, the doubt must be resolved against the Government and in favor of the taxpayer. Gould v. Gould, 245 U. S. 151, 153, 38 S. Ct. 53, 62 L. Ed. 211. The rule is stated by Lord Cairns in Partington v. Attorney-General, L. R. 4 H. L. 100, 122:

" 'I am not at all sure that in a case of this kind—a fiscal case—form is not amply sufficient; because, as I understand the principle of all fiscal legislation, it is this: If the person sought to be taxed comes within the letter of the law, he must be taxed, however great the hardship may appear to the judicial mind to be. On the other hand, if the Crown, seeking to recover the tax, cannot bring the subject within the letter of the law, the subject is free, however apparently within the spirit of the law the case might otherwise appear to be. In other words, if there be admissible in any statute what is called an equitable construction, certainly such a construction is not admissible in a taxing statute, where you can simply adhere to the words of the statute.' And see Eidman v. Martinez, 184 U. S. 578, 583, [22 S. Ct. 515, 46 L. Ed. 697]."

For the reasons above outlined, we think that the judgment of the court below was right. It is therefore affirmed.