FARRAR *et al.*, Appellants, v. DEAN, Respondent.

1. The real estate of an alien escheats to the state at his death.
2. A sale of real estate belonging to an intestate's estate for the purpose merely of paying the costs of administration, no debts appearing ever to have been due from the intestate, is invalid, though approved by the Probate Court.

*Appeal from St. Louis Land Court.*

*F. A. Dick*, for appellants.
*B. A. Hill* and *W. Preston*, for respondent.

RYLAND, Judge, delivered the opinion of the court.

This is an action in the nature of a suit in ejectment brought by plaintiffs, as trustees for Martha J. Sweringen, to recover possession of a lot in the city of St. Louis. The lot was sold by the public administrator of St. Louis county as property belonging to the estate of Christopher F. Schewe, deceased, and the plaintiffs derive their title under the purchaser of the estate at the sale.

It seems from the record that the lot was deeded to Schewe by Wm. Chambers, Wm. Christy and Thomas Wright, in 1817; that letters of administration were taken out on the estate of Schewe in June, 1850, and the sale was made, and in December, 1851, was approved; that Salisbury became the purchaser at the administrator's sale, and that he afterwards deeded the lot in controversy to Farrar and Sweringen, the plaintiffs, as trustees for Mrs. Sweringen. It appears that Schewe was a foreigner, a German, by birth, and was in 1817 a very old man; that shortly after the winter of 1819 he (Schewe) left St. Louis for Florida, as was said, and that he has never been heard of since. There was no personal estate—no other property of Schewe than the lot—and there were no debts due by the estate or to the estate. The administration created the debts by making costs. There were none before it commenced.

The order of sale was made to pay the costs that had accrued in taking out administration, and investigating the title, and paying taxes on it, after the administration commenced. No inquest was ever taken declaring the said Schewe an alien. The defendant claimed the land by conveyance from Wm. Christy, her father ; and set up the defence of adverse possession for twenty years before the commencement of suit. There was a trial by jury and verdict for defendant. The plaintiffs bring the case here by appeal, and they complain of improper instructions given by the court to the jury.

We do not consider it a matter of much importance as to the instructions given — whether they were correct or not ; as the judgment below must be affirmed on other grounds, which entirely destroy the plaintiffs' right to recover. The legal presumption of Schewe's death commences sometime in 1827 or 1828. At his death, he being a foreigner, his lot would instantly and of necessity, (as the freehold can not be kept in abeyance,) without any inquest of office, escheat and vest in the state, because he is incompetent to transmit by hereditary descent. (2 Kent's Com. 54.) Chancellor Kent says : " Though an alien may purchase land, or take it by devise, yet he is exposed to the danger of being divested of the fee, and of having his lands forfeited to the state, upon an inquest of office found ; and if he does, before any such proceeding be had, we have seen that the inheritance can not descend, but escheats of course." (2 Kent's Com. 61.) Our act of 6th December, 1820, permitted resident aliens in any of the United States or territories, who shall have made a declaration of their intention of becoming citizens of the United States by taking the necessary oath in due form of law, to inherit, and to transmit the inheritance of real estate within this state, and to acquire and hold the same by descent or purchase, and to alienate the same, and to have the same rights and incur the like duties, in relation thereto, as if they were citizens of the United States. The intention to become citizens and the preparatory oath are necessary to this privilege. Here is an old man—a foreigner ; there

is no evidence of any declaration on his part of an intention to become a citizen of the United States, nor of any oath to that effect taken. This presents a serious objection to the plaintiffs' recovery here. But this is not the most fatal one; nor do I rely alone on this. There is an obstacle in the way of the plaintiffs' recovery, in this case, upon the title exhibited by them, insurmountable, in my opinion.

The administrator has no power over the real estate, except so far as to hold it for the payment of the debts of the deceased; and when there are no debts, the land descends to the heirs, or escheats to the state; and it is not in the power of the administrator to hinder this legally; nor can the Probate Court direct or order a sale of real estate for costs accrued after the administration begins, and only because it did begin. Such costs are not debts due by the deceased, nor debts at the time of the death of the intestate.

Here, a man is unheard of for thirty years—was an old man when he left—no debts left behind him—no debts ever brought forward or heard of as due and owing by him—no proceeding by attaching creditors to reach his property. Thirty years pass away; a new generation has come forward, and, by its sharp-sighted, keen, penetrating benevolence, undertakes to take up and manage the estate of him, who has probably ceased to think about it for a quarter of a century. There is no case for an administration, and the public administrator should have scouted the idea of interfering with it.

"Where there are not sufficient personal estate and effects charged with the payment of the debts of any testator or intestate, it shall be the duty of the executor or administrator to make application to the court of probate of the proper county in which his letters were granted, by petition, setting forth the facts, and praying that an order or decree may be made for the sale of any real estate of the testator or intestate, the sale of which is not provided for by his will, or so much thereof as shall be necessary for the payment of the debts of the deceased," &c. (R. C. 1825, p. 106.) "If any person die and *not*

*leave personal estate sufficient to pay his debts*, the executor or administrator shall file a petition to the county court stating the facts, and praying for the sale of such estate or so much thereof as will pay the debts." (R. C. 1835, p. 52.) The provision of the code of 1845 is the same except that the word " leave" is changed to " have." " If any person die and *not have personal* estate sufficient to pay his debts," &c. (R. C. 1845, p. 84.) Now no person can read these provisions of our administration law without being satisfied with the object of our legislation upon this subject. It was to prevent persons from placing their real estate out of the reach of creditors by will, and to save it also for the heirs when not necessary for the creditors. It might be sold under certain proceedings when necessary to pay the debts of the deceased—when a person shall die and not leave personal estate sufficient to pay his debts. It is, beyond doubt, that the debts, to be paid by a sale of the real estate of a deceased person, were debts and liabilities of that person only—debts due or to become due by him. No one ever imagined that the legislature designed to place the power in the hands of the administrator to create the debt, and then to sell the real estate of the decedent to pay for it. When there are no debts, there is no law to sell the real estate. The administrator can not procure, in such a case, an order for its sale without a violation of law.

From the record of the Probate Court, used in this case, it is manifest that there were no debts. Schewe has not been seen or heard of here for thirty years; his lot, in this case, was sold to pay the costs of administration. We can not shut our eyes to the fact that the administration was begun for the purpose of selling the lot; not for the purpose of paying his debts, for there were none; not to save his estate for his heirs, for there were none; but to get hold of his real estate by means seemingly consistent with law; and therefore the administration began. It made costs, and then sold the property, the lot, to pay them! Now, where the proceedings of the probate courts, in decreeing the sales of real estate, are substan-

tially correct—where there were debts to be paid, and sales necessary to their payment, we will not lend a scrutinizing eye to find defects in such proceedings; yet, when we see that the law has not been complied with in a material point, and it appears affirmatively, so that there is no room to presume a compliance with its provisions, we must hold such sales invalid. (Valle v. Flemming. 19 Mo. 454; 16 Mo. 9.)

I presume that this is the first case where, under our law, real estate has ever been sold for the costs of administration—where there were no debts outstanding against the estate, and the administration was taken out for the purpose of reaching and selling such real estate; for, unless this was the object in this administration, there is none other that we can perceive. It is the duty of the courts, then, to put a check to this matter when first brought to their notice. Therefore, without considering the instructions given by the court below, we shall affirm the judgment; Judge Scott concurring in this judgment.