In re Antoine Motier's Estate ; G. B. Dorman, Executor, Appellant.

### October 28, 1879.

1. The statutory provision of $400 to the widow, in addition to the specific articles allowed her, cannot be paid out of a surplus remaining of the proceeds of the sale of real estate, but must come from the personal estate only.

2. The real estate and its surplus proceeds remaining after an administrator's sale for debts belong to the heirs.

3. An administrator has no right, as administrator, to pay off special tax-bills against the intestate's property.

4. An administrator cannot credit himself with improvements to the realty, made without order of court or other authority.

5. Nor can he credit himself with the payment of accumulated interest on an allowed demand which, without reason, he has allowed to remain unpaid.

Appeal from St. Louis Circuit Court.
*Affirmed.*

T. Z. BLAKEMAN, for appellant: "The widow's right is absolute, and vests immediately upon the death of her husband." — Wag. Stats. 88, sects. 35–37; *Hastings* v. *Meyers*, 21 Mo. 519; *Cummings* v. *Cummings*, 51 Mo. 261; *In re Klosterman*, 6 Mo. App. 314. The balance of the proceeds of the fifty-foot lot, after paying the special debts, were assets in the hands of the executor. — *Governor* v. *Chouteau*, 1 Mo. 731; Wag. Stats. 95, sect. 12. The heirs are estopped from objecting to the administrator taking credit for the payment of the special tax-bills. — *Bird* v. *Governor*, 2 Mo. 102.

J. H. WIETING, for distributees: The $400 allowed the widow must be paid out of the personalty. — *Cummings* v. *Cummings*, 51 Mo. 261; *Hastings* v. *Myers*, 21 Mo. 519; *Bryant* v. *McCune*, 49 Mo. 547. The administrator had no right to pay special tax-bills against the estate. — *Seibert* v. *Allen*, 53 Mo. 44; *Aubuchon* v. *Long*, 23 Mo. 99; *Sturgeon* v. *Schaumberg*, 40 Mo. 482. It has been decided, under statutes of administration similar to our own, that the executor has no power to pay even *general* taxes, except such as were assessed against deceased previous to his death. — *Wilcox* v. *Smith*, 26 Barb. 316; *Phelps* v. *Funkhouser*, 39 Ill. 401.

LEWIS, P. J., delivered the opinion of the court.

Antoine Motier died in 1870, leaving a will, in which, among other provisions, it was directed that the executor sell certain lands, and appropriate the proceeds in payment of certain sums due from the testator to his children. All the testator's personal property was bequeathed to his widow for the term of her natural life. The entire personalty of the estate consisted of $160 in money, some household furniture, and a note upon which the executor realized $200. The money and the household furniture were retained by the widow. The executor paid her sums of

money at different times, so that the whole amount received by her, including the $160 retained, was $460.64.

In February, 1875, the executor presented his final settlement in the Probate Court, whereupon exceptions were filed thereto by some of the distributees.  Pending the hearing of the exceptions, the widow presented her claim for an allowance of $400 under sect. 35, Wagner's Statutes, p. 88, and for $300 under sect. 34, in lieu of grain, meat, and provisions, etc.  The Probate Court refused to allow the first claim, but granted the second, making the $160 which she had retained a part of the $300 allowed.

The court refused to credit the executor with any payments made to the widow in excess of this allowance.  Other credits claimed by the executor for certain special tax-bills paid by him, and for improvements on the real estate, were also disallowed.  The executor appealed to the Circuit Court, wherein the action of the Probate Court was sustained.  A demand in favor of Amade Perrot was allowed against the estate, March 19, 1872, for $566.66, to bear interest at ten per cent per annum.  This demand was yet unpaid at the date of the final settlement, and the executor was ordered to pay it.  This order was affirmed and renewed by the Circuit Court.

Without going into explanatory details, it may suffice to say that the controversy concerning the widow's claim of $400 turns chiefly upon the question whether such a claim can, in any case, be paid out of the proceeds of a sale of real estate.  As the personal estate handled by the executor never exceeded $360, it was of course impossible to pay the widow $400 in addition to the $300 allowed, without drawing upon the proceeds of the realty.  The executor supposed that he could do this, notwithstanding the facts that the widow was already in possession of the entire household furniture, and a creditor's demand was yet unpaid and accumulating interest.

The statute, after declaring what specific articles may be claimed by the widow, proceeds thus : —

" Sect. 35. In addition to the above, the widow may take such personal property as she may choose, not to exceed the appraised value of four hundred dollars, for which she shall give a receipt.

" Sect. 36. The widow shall apply for such property named in the preceding section before the same shall be distributed or sold, and it shall be deducted from her dower in the personal estate, if there be any ; but the property so delivered shall in no case be liable for the payment of the debts of the deceased."

It is clear from the tenor of these two sections that the provision intended must come from the personal estate only. The land belongs to the heirs. It cannot be touched for any of the purposes of the administration, except in the specific mode and for the specific objects elsewhere indicated by statute. When real estate is converted into money, whatever surplus remains after a proper application of the objects of the conversion still represents the realty for the benefit of the heirs, and cannot be merged in the personalty for purposes which pertain only to that classification. The courts below did right in refusing to put the widow on a footing with general creditors, or with those for whose especial benefit the executor was directed to sell the land.

It would seem that after payment of the widow's $300 allowance there remained of personalty in the executor's hands the sum of $60, to which the widow's claim under the thirty-fifth section might attach. But she had already received and retained the household furniture. For aught that appears in the record, we may suppose that the value of the furniture equalled or exceeded the amount which the widow might claim under the thirty-fifth section.

No appraisement or valuation appears. Upon the valuation just supposed, the courts below could not do otherwise

than refuse any allowance under the thirty-fifth section. As the testimony, if any, on this point is not preserved, every presumption in this court must be in favor of the findings of the inferior courts. We cannot, therefore, recognize any error in the refusal of even a partial allowance under the thirty-fifth section.

The executor complains that he was refused credits for his payment of special tax-bills on account of public improvements adjacent to lands belonging to the estate. There was no error in this. The tax-bills accrued after the death of the testator, and constituted no demand against his personal representatives. This created a lien on the land, in which the executor had no interest whatever except such as might arise from powers granted in the will or from statutory directions. Neither of these sources of authority invested him with any right to pay off a lien upon the land, unless such lien, like that of a general tax, was incidental to a personal demand against the estate. The heirs were the parties directly interested, and they might have found means to defend successfully against the tax-bills. The statutory direction to " collect and preserve the estate " has manifestly no reference to such proceedings. Its object is to prevent the loss, waste, or destruction of perishable property. If the executor's claim is correct, he might under the same statutory provision institute and maintain a suit in ejectment for the benefit of the estate. The same principles are applicable to the executor's claims for improvements put upon the realty, under an order of court, or other authority whatever. *Aubuchon* v. *Lory*, 23 Mo. 99 ; *Sturgeon* v. *Schaumburg*, 40 Mo. 482.

There was no error in the order upon the executor to pay off the allowed claim of Perrot. After the sale of real estate and the payments out of the proceeds, as directed by the will, there remained in the executor's hands about $1,100. Instead of paying the Perrot demand out of this money, he allowed it to run on for years, accumulating interest,

while he was making unauthorized payments to the widow and other persons. By this gross mismanagement the indebtedness of the estate was largely increased; and as the executor deliberately wasted the assets, which might easily have satisfied the demand before it became overgrown, it is but just that he now make the indemnification implied in the order.

All the judges concurring, the judgment is affirmed.