RITCHEY *et al.*, *Administrators, Appellants*, v. WITHERS.

1. **Administrator's Annual Settlements, not Conclusive.** The annual settlements of an administrator are not conclusive on creditors, but may be reviewed and corrected at their instance on final settlement.

2. **Administration**: APPLICATION OF PROCEEDS OF SALE OF LANDS. The proceeds of the sale of lands of a decedent, cannot be used to make good a deficiency in the widow's allowance, nor to reimburse the

administrator for improvements put upon the land, nor for any other purpose than the payment of debts. See *Drowry v. Bauer*, 68 Mo. 155.

3. ———: NUNC PRO TUNC ORDERS. If there is a discrepancy between the judgment of the probate court allowing a demand against the estate of a decedent and the entries made by the clerk on the back of the demand and in the book of abstracts of allowances; the latter may, by a *nunc pro tunc* order, be made to conform to the judgment.

*Appeal from Newton Circuit Court.*—HON. JOSEPH CRAVENS, Judge.

REVERSED.

*C. W. Thrasher* and *H. C. Young* for appellants.

*Henry Brumback* for respondents.

NORTON, J.—This is a case arising on the exceptions of defendants, as creditors of R. N. Christian, deceased, to the final settlement of administrators of the estate of said deceased. In the trial court the exceptions to three credits claimed by plaintiffs were sustained, from which action plaintiffs have appealed, and insist that the trial court erred in disallowing each one of said credits.

It appears from the record that said Christian died the 29th day of October, 1864, leaving a widow, who, on the 25th day of September, 1865, in conjunction with her co-plaintiff Ritchey, took out letters of administration on said estate; that the sale of personal property of said estate amounted to $266.50; that the widow took as her absolute property $200; that there was also allowed her certain property valued at $53.50; that she was also allowed $155, to supply deficiency of grain, meat, etc., for the support of herself and family for twelve months; that the debts proven up against the estate amounted to about $3,300; that the above allowances exhausted the personal estate, and for the payment of debts it became necessary to resort to the real estate of deceased, consisting of 562 acres of land in the county of Newton; that under an order of the probate

court plaintiffs sold said land on the 13th day of April, 1869, for $4,400, for the purpose of paying the debts; that at the May term, 1869, of said court, and after the approval of the report of sale, an order was made allowing the administrators the sum of $600 for improvements and repairs put on said real estate; and also the sum of $400 was allowed to the widow in addition to former allowances for deficiency in grain, etc., for year's support of widow; that at the same time an order was also made directing the administrators to pay seventy-five per cent of the debts of the fifth class. It also appears that the real estate sold had neither house, outbuildings, fence or other improvement on it at the time letters of administration were taken out, and that the widow and administratrix had, before the sale, erected thereon various improvements, consisting of a hewed log house, crib and shed and fencing, and putting in cultivation about fifty acres of land, which improvements, together with the land, she had enjoyed up to the time of sale; and that because of such improvements the land had been enhanced in value from $600 to $1,000.

It also appears that on the 27th day of February, 1867, a demand for $70.40 was allowed one J. M. Ritchey, which, according to the record, was assigned to the fifth class, but, according to the indorsement on the back of the note and the entry made in the abstract of demands, was assigned to the sixth class. In July, 1874, an order *nunc pro tunc* was made directing this demand to be paid as of the fifth class, and the administrators paid thereon $66.18.

It also appears that in the annual settlement of plaintiffs made the 7th day of August, 1869, credits were allowed them for the above sums of $600 and $400. and in their annual settlement made on the 11th day of April, 1876, they were credited with the said sum of $66.18 paid Ritchey. On the final settlement defendants excepted to the allowance of the above three items, and the exceptions were sustained, and the only question before us is, whether or

not on the above state of facts the court acted properly in disallowing these credits.

It is argued that the action of the county court in allowing said credits in the annual settlements is conclusive upon defendants, who are creditors. This has been held otherwise in the case of *Picot v. Biddle*, 35 Mo. 38, where it is declared that such settlements are not conclusive, but are subject to review and correction on final settlement.

1. ADMINISTRATORS' FINAL SETTLEMENT, not conclusive.

In reviewing the annual settlement of plaintiffs on their final settlement, we are of opinion that the above state of facts fully justified the trial court in rejecting the credits claimed of the items $600 and $400, and in requiring the administrators to account for the same with six per cent interest. It will be observed from the facts stated herein, that, at the time the orders were made, allowing $600 for improvements and $400 for support of widow, there were no assets in the hands of the administrators except the money derived from the sale of the real estate. The county court had no power to order the sale of real estate except for the payment of debts, and when it was sold for that purpose, the proceeds arising from the sale could not be diverted from it and applied to another and different purpose. The county court could not have ordered a sale of the land for the purpose of paying the administrators for expenses incurred in making improvements thereon, nor for the purpose of raising money to appropriate to the widow for her support for twelve months, and it was equally powerless to appropriate to either of said purposes any part of the proceeds derived from a sale of land made to raise money to pay debts. *Presbyterian Church v. McElhinney*, 61 Mo. 540; *Chambers v. Wright*, 40 Mo. 482.

2. ADMINISTRATION: application of proceeds of sale of lands.

Section 131, Revised Statutes, provides that where any house, outbuilding, fence or other improvement on real estate requires repairs, the court may, on the application of any person interested, order such repairs to be made

without prejudice to the creditors. In this case the evidence does not show any order directing repairs, but it does show that there was neither house, outbuilding, fence or other improvement on said land to be repaired, and that all the improvements that were made were new structures. In the case of *Byrd v. Governor*, 2 Mo. 83, where an administratrix, before the discovery of the insolvency of the estate, used the assets in erecting a house over a cellar and on a foundation built by intestate, it was held that the administratrix in so doing made a gross misapplication of the funds of the estate, but that because of the agreement of all parties concerned it was proper to allow a credit for the increased value of the real estate to the securities in a suit on the administrator's bond for waste. The case does not go to the extent claimed for it by counsel, nor justify the order of the county court in this case, and if it did, it is virtually overruled by the cases *supra* of *Presbyterian Church v. McElhinney* and *Chambers v. Wright*.

The only remaining question is, whether the court erred in rejecting the credit of $66.18, money paid to Ritchey on his demand. This depends on the question whether the county court had the power to make the *nunc pro tunc* order of July 18th, 1874, correcting a mistake of the clerk in entering on the back of said demand and in the abstract of demands that it was assigned to the sixth class and directing its payment as of the fifth class. The facts disclosed by the evidence fully warranted such order. It appears from the minute book of the court, as well as from the record, that said demand was allowed, and in the judgment of allowance it was assigned to the fifth class of demands. The entry made by the clerk on the back of the demand as well as in the abstract of demands assigned it the sixth class. Under section 210, Revised Statutes, it is the province of the court to allow demands and designate the class to which they belong, and under the same section and sections 209 and 211 it is made the duty of the clerk, when thus allowed and

3. —— : nunc pro tunc orders.

classified, to enter on the demand the amount allowed and the class to which it belongs, and also to make a like entry in the abstract of demands, which he is required to keep. If the clerk in making these entries mistakes either the amount allowed or the class to which the demand has been assigned, it is clearly within the power of the court, when such mistake is made manifest by the record containing the judgment of allowances, to correct it by an order *nunc pro tunc.* The case of *Nelson v. Russell*, 15 Mo. 356, to which we have been cited, in no way conflicts with what is here said. It only decides that the classification of a demand, if erroneous, should be appealed from, and cannot be changed at a subsequent term after the assets are exhausted, and that the entry of classification on the demand and in the abstract book was a sufficient classification. If the record in that case had shown one classification of the demand, and that the county clerk had made an entry of a different classification, and the effort had been made by *nunc pro tunc* order to correct such mistake, we apprehend it would have been allowed, especially so if it appeared that at the time of the correction the assets of the estate had not been exhausted. For error committed in disallowing the above credit of $66.18, the judgment will be reversed and the cause remanded, to be proceeded with in conformity with this opinion. All concur.