PHILIP C. K. BARTLETT, EXECUTOR, AND EMILIE P. BARTLETT, EXECU-
TRIX, ESTATE OF HERSCHEL BARTLETT, PETITIONERS, *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15549.   Promulgated May 31, 1929.

*William T. S. Curtis, Esq., Walter E. Barton, Esq.,* and *Raymond
C. Cushwa, Esq.,* for the petitioners.
*L. S. Pendleton, Esq.,* for the respondent.

OPINION.

Littleton :. The issues raised by the pleadings will be considered in the order set out in our preliminary statement above.

With respect to issue (1) respondent confessed error at the hearing, and conceded that real estate, of the value of $12,000, owned by the decedent and his wife as tenants by the entirety is not subject to tax.

Since this amount has been included by the respondent in the gross estate, it should be deducted therefrom in redetermining the net estate subject to tax.

Issue (2) was settled by written stipulation, in which it was agreed by the parties that the petitioners are entitled to a deduction from the gross estate in the amount of $28,900 on account of the notes of the King Manufacturing Co. which were endorsed by the decedent during his lifetime and which at his death constituted a liability of the estate. Accordingly, the value of the gross estate should be reduced by said amount in redetermining the taxable net estate.

Issues (3) and (4) were submitted upon the record, without argument. Issue (3) pertains to a deduction from the gross estate claimed by the petitioners on account of executors' commissions. The amount claimed in the petition was $14,899.98, all of which was disallowed by the respondent. The petitioners allege and the respondent admits that under the laws of Missouri, where the estate of the decedent is being administered, executors are entitled to a commission equal to 5 per cent of the value of the personal property administered upon. The evidence shows that the estate of the decedent being administered upon includes personal property of the appraised value of $247,018.70. Therefore, the petitioners are entitled to a deduction from the gross estate of $12,350.93 on this account in redetermining the net estate. It is immaterial that the amount of the commission has not been allowed by order of the probate court or paid. *Stern et al., Executors*, 2 B. T. A. 102.

Issue (4) relates to the deduction of attorneys' fees. On November 30, 1925, the probate court passed an order allowing one Joseph Morton the sum of $5,000 for legal services rendered. This amount was allowed by the respondent as a deduction from the gross estate, but the petitioners also claimed an additional deduction of $5,000 on the theory that such amount would subsequently be allowed by the probate court. This amount so claimed by the petitioners was disallowed by the respondent. On July 30, 1928, after the commencement of this proceeding, the probate court passed an order allowing the firm of Morton & Morton an additional sum of $3,500 for legal services. It follows that the petitioners are entitled to an additional deduction from the gross estate of said sum of $3,500.

Thus, issue (5) presents substantially the sole material question in controversy here, namely, whether real estate owned by the decedent at the time of his death and situated in the State of Missouri constitutes a part of the gross estate for Federal-tax purposes, under the Revenue Act of 1921, which provides as follows:

SEC. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate; * * *.

The parties are agreed that the land in question is property in which the decedent had an interest at the time of his death, and no objection is made to the inclusion of the land in the gross estate on the ground that it was not subject to distribution as a part of decedent's estate. They are also in agreement that under the laws of Missouri, land is subject to the payment of charges against the decedent's estate, but they do not agree that land in Missouri is subject to the payment of administration expenses. The contention of the petitioner is that, since under the laws of Missouri land may not be sold for the payment of administration expenses, the lands in question are not subject to the payment of administration expenses and that, accordingly, a necessary requirement to the inclusion of this property for Federal-estate-tax purposes has not been satisfied. While the Commissioner seems to agree that lands in Missouri may not be sold for the payment of administration expenses, he contends that this is not decisive of the issue before us and that, regardless of this fact, when proper construction is given to the statute in question, in the light of interpretations given to the Missouri statutes, the land in controversy satisfies all conditions necessary for compliance with section 402 (a).

The section in question is identical with the corresponding provision in the Revenue Act of 1916, under which the case of *United States* v. *Field*, 255 U. S. 257, arose. That case involved the question whether the Act taxed a certain interest in personal property that passed under testamentary execution of a general power of appointment created prior, but executed subsequent, to its passage. Mr. Justice Pitney, in holding that the property in question was not taxable, for the reason that it did not satisfy the final condition set forth in the section, said:

The conditions expressed in clause (a) are to the effect that the taxable estate must be (1) an interest of the decedent at the time of his death, (2) which after his death is subject to the payment of the charges against his estate and the expenses of its administration, and (3) is subject to distribution as part of his estate. These conditions are expressed conjunctively; and it would be inadmissible, in construing a taxing act, to read them as if prescribed disjunctively. Hence, unless the appointed interest fulfilled all three conditions, it was not taxable under this clause.

While the foregoing case dealt with the satisfaction of an entirely different condition from that before us and concerned personal property rather than real, and therefore could not be controlling as to the issue before us, the decision is important as reflecting the attitude of the Supreme Court toward the conditions necessary to be satisfied

in order to make property of the class there being considered taxable for Federal-estate-tax purposes. Conceding for the purpose of the first part of this discussion that land, in the case before us, must likewise meet the same requirements, let us see whether the conditions set forth have been met. As heretofore stated, there is no controversy as to conditions (1) and (3), but only as to the second condition.

At the outset, in considering whether the second condition has been complied with, it should be observed that it is compound in its nature, the entire condition reading, " which after his death is subject to the payment of the charges against his estate and the expenses of its administration." Much of the argument presented by the petitioner, in effect, would seem to say that there are four conditions to be satisfied, namely, one and three as set out by the Supreme Court, and that the property must be subject to the payment of charges against the estate and also subject to the payment of administration expenses. That is, as we understand the petitioner's contention, it is that one of the conditions laid down by the Supreme Court is that the property must be subject to the payment of administration expenses, whereas this requirement is only a part of one condition. In view of the extent to which administration expenses are interwoven and connected with the payment of charges against an estate, we consider this joinder significant. Further, when the condition is considered in its entirety, it will be found that both parties are in agreement that the first part has been satisfied, namely, that the land sought to be included is subject to the payment of charges against the estate.

This brings us to an inquiry as to the status of administration expenses with respect to real estate under the Missouri statutes. In the first place, we do not think it is open to question that in Missouri real estate may not be sold for the sole purpose of paying administration expenses. *Farrar* v. *Dean*, 24 Mo. 16; *Presbyterian Church* v. *McElhinney*, 61 Mo. 540; *Ritchey* v. *Withers*, 72 Mo. 556; and *Elstroth* v. *Young*, 94 Mo. App. 351. It is, however, expressly provided by statute (section 141 of the Revised Statutes of Missouri (1919)) that land may be sold for the payment of debts due by the decedent at the time of his death, and legacies, provided his personal estate shall be insufficient to pay such debts and legacies. But unless there are debts due by the decedent at the time of his death or legacies to be paid, no authority exists in the administrator to create debts in the administration of the estate and then procure an order of the court for the sale of land in payment of charges thus created. As expressed in *Farrar* v. *Dean*, *supra*:

* * * No one ever imagined that the legislature designed to place the power in the hands of the administrator to create the debt, and then to sell the real estate of the decedent to pay for it. When there are no debts, there is

no law to sell the real estate. The administrator can not procure, in such a case, an order for its sale without a violation of law.

But does the fact that land may not be sold merely for the purpose of paying administration expenses mean that land is in no sense subject to the payment of such expenses? We think not. In the administration of an estate, among the expenses to be met before the payment of debts or legacies are administration expenses, and where there are debts or legacies to be satisfied, these administration charges will be paid out of the personal property before payment of debts or legacies from the real estate. But whether there will be considered sufficient personal property to satisfy the debts and legacies will be determined by taking into consideration the total liabilities for debts and legacies, together with the amount due for administration expenses. And if there be not sufficient personalty to take care of all of these demands, but more than sufficient to take care of the administration expenses, resort will then be had to the realty to make up the deficiency. It may be said that under such circumstances administration expenses are being met out of the personal property and that the deficiency which is being met out of the realty relates only to debts and legacies, but it is undeniably true that the deficiency to be met out of the sale of realty is greater because the administration expenses have consumed a part of the personalty. By way of illustration, a man leaves only $10,000 worth of personalty, but also leaves $5,000 in real estate. His debts are $9,000, and the expenses of administration amount to $2,000. It is not believed that any one would seriously question that under such circumstances real estate to the extent of $1,000 may and must be sold. Without the administration expenses no realty would be required to be sold. Whether we say that the administration expenses are paid out of personalty and the debts out of personalty and realty, or vice versa, would seem to be a mere choice of words and not material. The land can be sold only because the debt exists, but the sale is made on account of administration expenses in the same sense as it is of debts. Further, while land is admittedly subject to the payment of charges against the estate, the primary liability for the payment of such charges rests upon the personalty, and, therefore, it may be said that there is a difference of degree only as to the liability relationship between charges and administration expenses and land.

It also appears that where the funds coming into the hands of the administrator from all sources are insufficient to pay both debts and administration expenses, the former will be paid first and the balance apportioned among the creditors, section 224, Revised Statutes of Missouri, 1919, reading as follows:

PAYMENT OF CLAIMS—HOW ORDERED UPON' SETTLEMENT.—At every settlement, or at any time thereafter, when the best interests of the estate require it, the court shall ascertain the amount of money of the estate which has come to the hands of such executor or administrator from all sources, and the amount of debts allowed against such estate; and if there be not sufficient to pay the whole of the debts and expenses of administration, *the money remaining after paying the expenses of administration shall be apportioned among the creditors* according to the provisions of this chapter; and the court shall order that such executor or administrator pay the claims allowed by the court according to such apportionment, reserving apportionments made on claims which remain undecided until decision be had thereon. (R. S. 1909, § 233.) (Italics supplied.)

When the prior status of administration expenses is considered, this would seem to follow logically and not be inconsistent with section 149, Revised Statutes of Missouri, 1919, which provides:

THE PROCEEDS OF SALE, HOW APPLIED—PRIORITY OF LIENS. The proceeds of the sale of such real estate shall be first applied to the payment of such judgments and attachments, according to their priority of lien, and the residue of such proceeds, if any, shall become assets in the hands of the executor or administrator, to be administered according to law. (R. S. 1909, § 158.)

It may well be that deficiencies in administration expenses, not connected with expenses incident to the sale of real estate, may not be made up out of funds from the sale of real estate, yet it is certainly true that expenses connected with the sale of real estate may be paid out of the funds received from the sale of such real estate. *Elstroth* v. *Young, supra.* The aforementioned case did not, however, involve a deficiency in administration expenses outside of expenses incident to the sale of land by the administrator, but it did involve commissions deducted by the administrator on account of the distribution of the proceeds of a sale of real estate, and the court expressly held that such expenses were a proper charge against the funds received from such sale. Certainly, such expenses are administrative in character and the proceeds from the sale of the land are subject to the payment thereof. As the court said in *Steedman* v. *United States*, 63 Ct. Cls. 226:

The expression "expenses of administration" covers the whole field of administrative charges. It is difficult to see how real estate could be sold and the proceeds not be held liable for the expenses incident to the sale, which, in the case of a sale by an administrator under order of court, are part of the expenses of administration.

In any event, land which is subject to the payment of charges against his (the decedent's) estate is subject to the payment of expenses of its disposition and of the administration and distribution of the funds realized or derived from the sale.

When we consider that the phrase " subject to the payment of the charges against his estate " is joined with the phrase " and the expenses of its administration " in one condition, we fail to see why land in Missouri does not fully comply with this condition. The

two are so closely related that we can not have the former without the latter, and when the former does exist the land is certainly subject to the payment of administration expenses. The position of the petitioner would require not only that the two parts of the condition be treated as separate and distinct conditions, but also that the words " subject to " be construed to mean " liable to be sold for." But as we read the statute, we do not understand that it means more than that the property must be of such a nature and have such a relation to the decedent's estate that the burden of administering the estate is incident and subject thereto. In *Steedman* v. *United States, supra,* the court in construing the same provision which we have before us said:

Section 402, *supra,* does not use the word "liable; " it uses the words "subject to." "Subject to" does not necessarily mean "liable for." It may be said that where land is liable for sale for the payment of debts, it is subject to the payment of debts, but the converse is not necessarily true. Real estate may be under certain conditions "subject to" the payment of expenses of administration and yet not liable to sale therefor; that is, it may be under the contingency of or exposed to payment of administrative expenses and thus "subject to" the payment.

When considered in this manner, we do not find it necessary to decide whether the word " and " which joins the two parts of the compound condition is to be interpreted as meaning " and " or " or "; under either interpretation we think that land under the laws of Missouri sufficiently satisfies this requirement of the statute to make it includable in the gross estate of the decedent for estate-tax purposes.

The further consideration exists that if we were to carry petitioner's argument to its logical conclusion, not only would all land in Missouri be exempt from Federal estate taxes, but in other States as well. This would follow from a strict interpretation of the third condition set out in the statute, namely, " and is subject to distribution as part of his estate." In law the term " distribution " is accurately and technically applicable only to personal property, whereas the corresponding term applicable to real estate is " descent." In other words, in the ordinary accepted meaning of the terms, personal property is distributed to the persons beneficially interested therein, whereas real property descends to the heirs. But we can not think that Congress intended by the opening clause of section 402 that all real property should be included in a decedent's gross estate and then imposed limitations which would make of the statute a nullity in so far as real property is concerned. Either the limitations are applicable only to personal property, or a liberal construction must be given thereto, and under either interpretation we are of the opinion that land in Missouri satisfies its provisions. This

interpretation seems all the more reasonable when it is borne in mind that the statute is very broad, expressly including " all property, real or personal, tangible or intangible, wherever situated," subject only to the limitations here in controversy. Since the decedent owned this real property and since his interest therein ceased at his death, it would seem clear that if such property is not to be included in his gross estate for estate-tax purposes, the statute has (to use the language of Mr. Justice Holmes in *Irwin* v. *Gavit*, 268 U. S. 161), " missed so much of the general purpose."

Nor do we think it conclusive that the corresponding provision in the Revenue Act of 1926 eliminated the limitations which we are here considering. The explanation of the change was given by the Ways and Means Committee of the House in its report as follows:

* * * *In the interest of certainty* it is recommended that the limiting language above referred to shall be eliminated in the proposed bill, so that the gross estate shall include the entire interest of the decedent at the time of his death in all the property. (Italics supplied.)

The specific question before us has been before the Federal Courts on two occasions—first, in *Steedman* v. *United States, supra*, (*certiorari* denied, 275 U. S. 528) wherein the Court of Claims held that land in Missouri satisfies the requirements of section 402 (a), *supra*, with respect to the payment of administration expenses, and second, in *Harrelson* v. *Crooks*, 28 Fed. (2d) 510; *affd. 35 Fed. (2d) 416*, where an opposite holding was had. For reasons heretofore stated we agree with the conclusion reached in the *Steedman* case.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

MURDOCK concurs in the result.

---

TRAMMELL, dissenting: Issue (5) presents the sole material question in controversy here, namely, whether real estate owned by the decedent at the time of his death and situated in the State of Missouri, constitutes a part of the gross estate for Federal-tax purposes, under the Revenue Act of 1921, which provides as follows:

SEC. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate; * * *

Unless the Missouri real estate owned by the decedent at the time of his death comes within the above quoted statutory provision, it

should not be included in the gross estate of the decedent. The first question to be determined is whether the statute means that *all* of the conditions are required to be met, or whether any one or more of the stated conditions need not be met. In other words, whether the word " and " which connects the separate phrases is to be considered as meaning " or " in one or more places. It is fully recognized that these words may sometimes be used interchangeably. The courts have no hesitation in holding that " and " really means " or " or vice versa when such meaning is required in order to give the statutory provision involved the meaning clearly intended. But the general rule is that " and " really means " and "; that is, the phrases connected therewith are in the conjunctive unless the clear or manifest purpose of the statute will be ignored unless it be considered as meaning " or." The general rule is that Congress intended to use the exact language which it used and when that language is clear and unambiguous, resort can not be had to rules which are applicable to the construction of doubtful or ambiguous statutes. The language used must be given its ordinary meaning.

Aside from the statutory rules of construction, the United States Supreme Court in the case of *United·States* v. *Field*, 255 U. S. 257, has considered and construed the language in the Revenue Act of 1916, which, in so far as it is pertinent, is identical with the language used in this statute.

The *Field* case, *supra*, was an appeal from a judgment of the Court of Claims sustaining a claim for refund of an estate tax exacted under Title II of the Revenue Act of 1916, as amended. It presented the question whether the Act taxed a certain interest that passed under testamentary execution of a general power of appointment created prior but executed subsequent to its passage. The Government sought, *inter alia*, to sustain the tax under section 202 (a) of the 1916 Act, which contains the same provisions as section 402 (a) of the 1921 Act.

After referring to the accepted rule that the provisions of law imposing taxes are not to be extended by implication, the court, in its opinion, said:

The conditions expressed in clause (a) are to the effect that the taxable estate must be (1) an interest of the decedent at the time of his death, (2) which after his death is subject to the payment of the charges against his estate and the expenses of its administration, and (3) is subject to distribution as part of his estate. These conditions are expressed conjunctively; and it would be inadmissible, in construing a taxing act, to read them as if prescribed disjunctively. Hence, unless the appointed interest fulfilled all three conditions, it was not taxable under this clause.

The court found that the property in question did not fulfill one of the conditions prescribed by the statute, namely, that it was not

subject to distribution as a part of the decedent's estate, and held that it was therefore not 'taxable under clause (a) of section 202 of the 1916 Act.

It is true that the Supreme Court joined the two expressions "which after his death are subject to the payment of charges against the estate" and "the expenses of administration" and treated the two clauses as being a single condition which was to be met. It clearly does not follow that the court intended by this grouping of the two clauses to infer that the "and" which joined them was to be given the meaning of "or" and that the "and" which connected the other conditions was not to be so understood. To so hold would amount to imputing to the Supreme Court an inconsistency which its language does not warrant. Certainly the court did not hold that any of the clauses or phrases set out as conditions or limitations cn the taxation of property of estates of decedents were in the subjective or alternative. We are not left to the assumption that the court did not intend to depart from the principles of statutory construction applicable to revenue laws long established and many times affirmed by it, because the court referred to and reaffirmed those principles in the *Field* case.

Considering the two clauses joined together by the court as condition number two as one condition, it clearly contains two requirements. The clauses so joined together are connected by "and" and not "or." The court did not hold that they were in the alternative. To so hold would extend the statute by implication to subject to tax property clearly not expressly subject thereto. The two conditions are required to be met in condition two as classified by the court. Either one standing alone manifestly does not meet it. In other words, as interpreted by the court, there are three conditions to be met before property can be subjected to the estate tax, but one of those is a compound condition or a condition made up of two provisions, both of which must be met. To my mind this is a fair and reasonable interpretation of the *Field* case and this view would be consistent with the principles set out by the court in its previous decisions relating to the principles. of construction of revenue laws, which were referred to in that case, the court saying: "Applying the accepted canon that the provisions of such acts [revenue acts] are not to be extended by implication [citing authority] we are constrained to the view [expressed]."

In interpreting the language of the statute we must keep in mind that it is a revenue law that we are construing and that by interpreting the word "and" as meaning "or" or construing the provisions in the alternative has the effect of taxing property when the precise language used does not. One of the rules long recognized is that,

in statutes levying taxes, the literal meaning of words employed is most important, for such statutes are not to be extended by implication beyond the clear import of the language used. If the words are doubtful the doubt must be resolved in favor of the taxpayer. *Gould* v. *Gould*, 245 U. S. 151; *United States* v. *Merriam*, 263 U. S. 179.

Certainly, if we look to the literal meaning of the words used, the conditions under which property is to be subjected to the estate tax are in the conjunctive and each condition must be met. The purpose of the statute is perfectly clear when the words are given their literal meaning. On the other hand, to give the word " and " the meaning of " or " here would have the effect of extending the statute by implication to include as property subject to tax what is not included by the express or literal language used. It is not necessary here to construe one word to mean something wholly different in order to give effect to the statutory provision, conceding that under proper circumstances such might be done. It is not so manifest here that Congress has not expressed its meaning as to make applicable such rule of construction. In any event, it is only in cases when " and " manifestly and clearly is intended to mean " or," in order to give effect to the spirit and purpose of a statute, that such a construction is ever resorted to. But in a taxing statute such a rule should be even more sparingly and cautiously applied, especially when by so doing the taxing act is extended by such construction. In this connection it is to be observed that while the United States District Court for the Western District of Missouri, in *Harrelson* v. *Crooks*, 28 Fed. (2d) 510, and the United States Court of Claims, in the case of *Steedman* v. *United States*, 63 Ct. Cls. 226, reached different conclusions as to the question of whether real estate in Missouri was subject to the estate tax, both accepted the proposition that the provisions of the taxing statute here involved set out conjunctively the conditions under which property was to be taxed, and that all of the conditions are required to be met. The Treasury Department does not appear to have contended otherwise in the *Field* case, supra, in either of the above cited cases, or in this case. Both parties to the controversy in this case have relied principally upon the interpretation of the Missouri law as determining the controversy involved, except that the Commissioner contended that the expression " subject " to the payment of administration expenses did not mean " liable " therefor. On the other hand, the Commissioner, in his regulations under the Revenue Act of 1921, interpreted the provisions of the statute as being in the alternative and that all of the conditions were required to be met. Article 10 of Regulations 68, in so far as it is material, is as follows:

The test which determines whether the value of a given interest is to be so included (in gross estate) pursuant to the foregoing provision of the statute is that stated therein which requires that the property, after death shall be subject to (1) payment of charges against the estate; (2) payment of administration expenses; and (3) distribution as a part of the estate.

This article was carried forward into the 1924 regulations and the regulations under the 1926 Act draw a clear distinction as to the difference in the language of the Acts, the 1926 Act omitting the conditions. The Revenue Act of 1924 was passed in the light of the Department's uniform interpretation of the previous Act, and the 1926 Act specifically made a change therein. All of the foregoing considerations lead very strongly to the conclusion that the prevailing opinion is incorrect, that it is not supported by authority, or the statutory rules of construction.

But the point is made that the provision relating to charges against the estate was broad enough to include "expenses of administration." This would, of course, amount to saying that Congress used the phrase "and expenses of administration" without any meaning or effect whatever. This conclusion I can not draw. Such a construction violates long established rules of statutory construction. On the other hand, it seems to me to be clear that the two expressions "charges against his estate" and "expenses of administration" are not one and the same thing. In section 403 we find provision made for deductions from the value of the gross estate to determine the net estate. It provides for deductions of "such amounts for funeral, administration expenses, claims against the estate," etc. Administration expenses are again recognized as a separate item which is deductible. It is well established in law that "charges against the estate" and "administration expenses" are entirely separate and different things, and Congress in this statute clearly recognized such difference and treated administration expenses as a separate item. "Administaration expenses" are those expenses incurred in settling the estate, collecting or preserving the assets, or in connection with the duties of the administrator, while charges against the estate are the debts of the decedent or charges which, while not technically debts created by the decedent, are by statute made charges against the estate, such as funeral expenses.

The question as to whether "administration expenses" are to be included in "charges against the estate" seems to me, however, to be of no more than academic interest. Considering that they are to be so included, the effect then would be, if we reach the conclusion that real estate in Missouri is not subject to the payment of administration expenses, that real estate in that State would not be subject to the payment of all the "charges against the estate." The effect would be that real estate would be subject to only a part of the

charges against the estate. It seems to me to be immaterial whether we say that real estate is not subject to the payment of "administration expenses" or not subject to the charges against the estate, and that nothing is gained by classifying the expenses of administration under the head of "charges against the estate" if under any rule of statutory construction such an interpretation could be adopted, or such a conclusion reached.

In my opinion, if the real estate involved here fails to meet any one of the conditions specified in the statute, it must be excluded from the gross estate in determining the net estate subject to tax. And whether Missouri real estate fulfills those conditions must be ascertained from an examination of the laws of the State of Missouri. *Clarke* v. *Clarke*, 178 U. S. 186; *United States* v. *Field*, *supra; Lederer* v. *Pierce* (3 C. C. A.), 266 Fed. 497; *Wardell* v. *Blum* (9 C. C. A.), 276 Fed. 226.

It is conceded by the parties that the real estate, situated in Missouri and owned by the decedent at the time of his death, was, under the laws of Missouri, (1) subject to the payment of the charges against his estate, and (2) was also subject to distribution as a part of his estate. Thus, the property meets two of the three conditions prescribed in section 402 (a) of the Revenue Act of 1921, and the issue narrows to the question whether it was subject to the payment of the expenses of administration.

The Revised Statutes of Missouri, in effect in 1921, provided for the sale of lands to pay debts and legacies as follows:

SEC. 141. *Sale of Lands to Pay Debts.*—If any person die and his personal estate shall be insufficient to pay his debts and legacies, his executor or administrator shall present a petition to the proper court stating the facts; and praying for the sale of the real estate, or so much thereof as will pay the debts and legacies of such deceased person.

I have not been able to find any provision of the Missouri statutes specifically authorizing the sale of land to pay administration expenses of an estate. However, the question whether land in Missouri may lawfully be sold for such purpose has been before the courts of that State a number of times.

In *Farrar* v. *Dean*, 24 Mo. 16, the Supreme Court of Missouri held that a sale of real estate belonging to an intestate's estate, for the purpose merely of paying the costs of administration, no debts appearing ever to have been due from the intestate, was invalid, though approved by the probate court.

This was the first case to come before the Supreme Court of Missouri where real estate had been sold for the costs of administration and there were no debts outstanding against the estate, and the administration was taken out for the purpose of reaching and selling

such real estate. The case was decided by the Supreme Court at its October term, 1856. In the course of its opinion, the court said:

The administrator has no power over the real estate, except so far as to hold it for the payment of the debts of the deceased; and where there are no debts, the land descends to the heirs, or escheats to the state; and it is not in the power of the administrator to hinder this legally; nor can the Probate Court direct or order a sale of real estate for costs accrued after the administration begins, and only because it did begin. Such costs are not debts due by the deceased, nor debts at the time of the death of the intestate. * * *

After quoting from the Revised Codes of Missouri of 1825, 1835, and 1845, the court continued:

Now no person can read these provisions of our administration law without being satisfied with the object of our legislation upon this subject. It was to prevent persons from placing their real estate out of the reach of creditors by will, and to save it also for the heirs when not necessary for the creditors. It might be sold under certain proceedings when necessary to pay the debts of the deceased—when a person shall die and not leave personal estate sufficient to pay his debts. It is, beyond doubt, that the debts, to be paid by a sale of the real estate of a deceased person, were debts and liabilities of that person only—debts due and to become due by him. No one ever imagined that the legislature designed to place the power in the hands of the administrator to create the debt, and then to sell the real estate of the decedent to pay for it. When there are no debts, there is no law to sell the real estate. The administrator cannot procure, in such a case, an order for its sale without a violation of law.

The doctrine announced by the Supreme Court of Missouri in *Farrar* v. *Dean*, *supra*, has been reaffirmed and consistently followed in subsequent decisions. See *Presbyterian Church* v. *McElhinney*, 61 Mo. 540; *Teverbaugh* v. *Hawkins*, 82 Mo. 180; *Howell* v. *Jump*, 140 Mo. 441; 41 S. W. 976; *Garnett* v. *Carson*, 11 Mo. App. 290, and cases cited.

It seems to be established beyond controversy that, under the decisions of the highest courts of the State of Missouri, land in that State can not lawfully be sold to pay administration expenses. It appears also to be well established by the decisions of the same courts that when land in Missouri is sold to pay debts, as may be done under the statute when the personal estate is insufficient for that purpose, no part of the proceeds from the sale of the realty may lawfully be used for any other purpose, and specifically may not be used for the payment of administration expenses.

In *Ritchey* v. *Withers*, 72 Mo. 556, the Supreme Court of Missouri said:

The county court had no power to order the sale of real estate except for the payment of debts, and when it was sold for that purpose, the proceeds arising from the sale could not be diverted from it and applied to another and different purpose. The county court could not have ordered a sale of the land for the purpose of paying the administrators for expenses incurred in making improvements thereon, nor for the purpose of raising money to appropriate

to the widow for her support for twelve months, and it was equally powerless to appropriate to either of said purposes any part of the proceeds derived from a sale of land made to raise money to pay debts. *Presbyterian Church* v. *McElhinney,* 61 Mo. 540; *Chambers* v. *Wright,* 40 Mo. 482.

In the case of *In re Motier's Estate,* 7 Mo. App. 514, the St. Louis Court of Appeals said:

The land belongs to the heirs. It can not be touched for any of the purposes of the administration, except in the specific mode and for the specific objects elsewhere indicated by the statute (payment of debts and legacies). When real estate is converted into money, whatever surplus remains after a proper application of the objects of the conversion still represents the realty for the benefit of the heirs, and cannot be merged in the personalty for purposes which pertain only to that classification.

Again, the St. Louis Court of Appeals, in *Elstroth* v. *Young,* 94 Mo. App. 351, said:

The proceeds of the sale of lands made by an order of the probate court in pursuance of the provisions of chapter I, article 8, Revised Statutes 1899, can not be used for the purpose of making good deficiencies in the expenses of administration *Ritchey* v. *Withers,* 72 Mo. 556.

This same court, in the case of *State, etc.* v. *Doud,* 269 S. W. 923, decided March 3, 1925, said:

It is well settled law that, when a person dies the owner of real estate, the title to such real estate passes to and vests in the heir or devisee *eo instante,* subject to the right of the administrator or executor to sell the same for the payment of the debts of the decedent. If the real estate is sold by order of the probate court for the payment of the debts of the decedent, any surplus of the proceeds of the sale remaining after payment of the debts goes to the heir or devisee, and if the heir or devisee has conveyed the real estate the surplus belongs to her grantee. In other words, when real estate is converted into money for the payment of the debts of the decedent, the surplus of the proceeds of the sale remaining, after payment of the debts, retains the character of real estate for the purpose of succession or distribution, and goes to the person in whom the title to the real estate was vested when it was converted.

The precise question here involved has twice been the subject of decisions by Federal courts. In *Harrelson* v. *Crooks,* 28 Fed. (2d) 510, the United States District Court for the Western District of Missouri, Northern Division, on September 13, 1928, held that, since Missouri real estate was not subject to the expenses of administration under the decisions of the Missouri courts, such property was not taxable under section 402 (a) of the Revenue Act of 1918 (which contains the same provisions as the corresponding section of the Revenue Act of 1921).

In *Steedman* v. *United States,* 63 Ct. Cls. 226, decided February 28, 1927, the Court of Claims held that the value of the gross estate of a decedent in the State of Missouri, subject to the provisions of section 402 (a) of the Revenue Act of 1921, includes the real estate

owned by such decedent at the time of his death. The opinion of the court in this case has been carefully considered, and I find myself unable to concur in the conclusions reached.

In the *Steedman* case, *supra*, the court concludes that:

Section 402, *supra*, does not use the word "liable"; it uses the words " subject to". "Subject to" does not necessarily mean "liable for". It may be said that where land is liable for sale for the payment of debts, it is subject to the payment of debts, but the converse is not necessarily true. Real estate may be under certain conditions "subject to" the payment of expenses of administration and yet not liable to sale therefor; that is, it may be under the contingency of or exposed to payment of administrative expenses and thus "subject to" the payment.

Real estate may be sold under the Missouri statute for the payment of debts, and, having been sold, because the personal estate was not sufficient to pay the debts and the administration expenses, the latter could be paid, under the decision of the court of Missouri, out of the fund realized from the sale. *Howell* v. *Jump*, 140 Mo. 441. If the proceeds from the sale of real estate for payment of debts may be used under certain contingencies for the payment of administration expenses, it is in such a case " subject to" the payment of the expenses of administration.

I have examined the decision of the Supreme Court of Missouri in *Howell* v. *Jump*, cited by the Court of Claims, *supra*. In my opinion, however, the court in that case did not hold that funds derived from land sold to pay debts could lawfully be used to pay administration expenses. On the contrary, as I read the opinion, the court specifically adhered to the doctrine announced in its former decisions that in Missouri a sale of land by an administrator could only be made for the purpose of paying debts of the decedent, and further that if land was sold for the purpose of paying debts, the use of the proceeds to pay costs of administration would be an improper application thereof.

In the case of *Howell* v. *Jump*, *supra*, the plaintiff purchased, at an administrator's sale, a certain tract of land situated in Missouri, and later, on learning that he had thereby acquired only an equitable title, he brought a suit in equity against the heirs of the decedent to quiet his title in the land. It appears that the land in question was sold by the administrator for the particular purpose of paying unsatisfied debts of the decedent. The land was sold for $26.50, and a subsequent settlement disclosed that the amount realized on the sale was only sufficient to pay the costs of administration and sale. The question before the court was whether the purchaser acquired a valid title. In its opinion, the court said:

The fact that the land only sold at the administrator's sale for enough to pay the costs of administration, does not defeat this sale. It is true, a sale of land by an administrator can only be made for the payment of the debts of

the deceased. A sale made merely for the purpose of paying the costs of administration has been held to be invalid. *Farrar* v. *Dean*, 24 Mo. 16. But in this sale there were debts remaining unpaid, and the sale was made for the purpose of paying them. The court therefore had jurisdiction to order the sale, and the purchaser was not bound to bid an amount which would pay the debts, or to see that the money paid was properly applied. (Italics supplied.)

In other words, the fact that the proceeds of the sale of the land may have been *improperly* applied to the payment of administration expenses did not invalidate the sale made for a purpose authorized by statute, that is, to pay debts. It seems to me that the court clearly did not go any farther than that.

In his brief, the respondent lays emphasis on the distinction between the words " subject to " and " liable for." He says: " The adjective ' subject ' means ' being under the contingency of; dependent upon or exposed to (some contingent action)' "; and in referring to that part of the opinion of the court in the *Steedman* case, above quoted, further says:

The Court pointed out the distinction between the word "liable" and the words "subject to" and held that since real estate may be sold under the Missouri statute for the payment of debts the proceeds under certain contingencies may also be used for the payment of administration expenses and that real estate is therefore "subject to" the payment of such expenses although not "liable" to sale therefor.

But if Missouri real estate, under the decisions of the courts of that state, can not be sold by an administrator to pay expenses of administration, and if when sold to pay debts, no part of the proceeds can lawfully be used to pay expenses of administration, how then can it be said that such real estate is in any sense either " liable for " or " subject to " the payment of administration expenses?

The only decision of the Missouri courts relied on in the majority opinion as authority that administration expenses or any part thereof might be paid out of proceeds from the sale of real estate is the case of *Elstroth* v. *Young*.

The *Elstroth* case was before the appellate court three times. On the last appeal, the judgment of the circuit court was affirmed. This case involved the disposition of a portion of the proceeds from the sale of 120 acres of land, which constituted the homestead of the deceased and upon which he resided at the time of his death. The land was encumbered by a deed of trust for $2,800, and was sold by the trustee to satisfy the debt secured thereby. The land brought, over and above the secured debt, the amount of $1,767.36, which surplus was paid over to the public administrator, who was in charge of the estate of the decedent, and who was also guardian of the decedent's minor children. The creditors of the estate sought to have this fund distributed to them as an asset of the estate, whereas the admin-

istrator contended that it belonged to the heirs, representing their homestead interest in the land. The court finally determined that $816.16 rightfully belonged to the heirs, and that the balance should be distributed among the creditors, after deducting certain items of cost, including taxes, probate fees, fee of the administrator *ad litem*, cost of advertising the land for sale, printing briefs, 5 per cent commission of the administrator, and costs of the proceedings in the circuit court and probate court. The court in its opinion said:

The contention is over the taxation of the costs which accrued in the proceedings of the creditors (appellants) against Young, administrator * * *. There was no dispute as to the amount of the fund in Young's hands, nor the source from which it was derived. · The contention was as to which it belonged— the estate or the minor heirs. The creditors, in claiming the whole of the fund, denied the right of the heirs to any portion of it,—denied their homestead right. The contest was therefore in respect to the existence of this right, and the losing party in this contest, as in any other, should be taxed with the costs of the proceedings.

Thus, the court taxed the 5 per cent commission of the public administrator as a part of the costs of the proceedings in the same manner as the fees of other officers of the court, which costs it required the losing litigants, namely, the creditors, to pay out of the amount of their judgment obtained in a prior suit. The effect of the court's judgment was to direct the payment to the creditors of the decedent of the entire amount of the proceeds derived from the sale of the real estate after the payment of the secured claim and after setting apart the heirs' homestead interest, and then to require the creditors to pay the costs of the proceedings, including the public administrator's fee of 5 per cent. In other words, the administrator's commissions were paid by the creditors. Hence, it can not be said that any part of the proceeds from the sale of the decedent's real estate was in fact used to pay the expenses of administration. Such amount did not reduce the amount that the heirs were entitled to receive. The effect would have been the same if the creditors had paid the costs including the administrator's commissioners out of their own funds. A portion of the fund from the sale of realty was paid to creditors but they were required to pay the administration expenses involved.

It follows that the decision in this case does not in any respect modify the former decisions of the Missouri courts to the effect that proceeds from the sale of land in that State can not lawfully be used to pay administration expenses, and plainly the court of appeals did not intend that its opinion should be otherwise construed on this point, for in its opinion it said:

The proceeds of the sale of lands, made by an order of the probate court * * * can not be used for the purpose of making good deficiencies in the expenses of administration. *Ritchey* v. *Withers*, 72 Mo. 556.

The Revenue Acts of 1916, as amended, 1918, 1921, and 1924, provide that for estate-tax purposes, the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, wherever situated "(a) to the extent of the interest therein of the decedent at the time of his death *which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate.*" (Italics supplied.)

The Revenue Act of 1926 provides that the gross estate of the decedent shall be determined by including the value at the time of his death of all property, wherever situated, "(a) to the extent of the interest therein of the decedent at the time of his death."

The Ways and Means Committee of the House, in its report on the 1926 Revenue Bill, said:

Under existing law the gross estate is determined by including the interest of the decedent at the time of his death in all classes of property which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate. In the interest of certainty it is recommended that the limiting language above referred to shall be eliminated in the proposed bill, so that the gross estate shall include the entire interest of the decedent at the time of his death in all the property.

It is clear, I think, that the Revenue Act of 1921 imposes the estate tax upon the transfer of the net estate only to the extent indicated in section 402 (a) and the change in the Revenue Act of 1926, eliminating the three conditions contained in the prior acts, expressed a new intention of Congress to tax all property, wherever situated, to the extent of the interest therein of the decedent at the time of his death. This change can not be regarded as an elucidation of the provisions of the prior acts, but is an addition to them, and constitutes the declaration of a new purpose, not the explanation of an old one. *Shwab* v. *Doyle*, 258 U. S. 529. See also *United States* v. *Field, supra.*

A careful consideration of the decisions of the courts of Missouri hereinabove referred to leads me to the conclusion, (1) that lands situated in that State can not lawfully be sold by an administrator to pay expenses of administration, and (2) that proceeds from land sold to pay debts can not lawfully be used to pay expenses of administration.

It is my opinion, therefore, that the real estate situated in Missouri owned by the decedent at the time of his death was not " subject to the payment of * * * the expenses of * * * administration," and the value thereof may not be included in the gross estate of the decedent in determining the net estate subject to tax.

MARQUETTE and SIEFKIN agree with this dissent.